[Cite as *Collins v. Collins*, 2011-Ohio-2087.]

STATE OF OHIO          )                  IN THE COURT OF APPEALS
                                 )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE      )

| | |
|---|---|
| EMORY J. COLLINS | C.A. No. 10CA0004 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KARIN A. COLLINS | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 07-DR-0564 |

DECISION AND JOURNAL ENTRY

Dated: May 2, 2011

Per Curiam.

**{¶1}** Appellant, Karin Collins, appeals from a judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, that granted her a divorce from Appellee, Dr. Emory Collins, and ordered Dr. Collins to pay child and spousal support. This Court reverses and remands.

I.

**{¶2}** The parties were married in July 1993 and have two minor children. During the early years of their marriage, Mrs. Collins worked as a school teacher while Dr. Collins attended medical school and later obtained specialized training as a pediatric gastroenterologist. During those years, Mrs. Collins supported the household. Mrs. Collins followed Dr. Collins to various parts of the country in support of his career. While living out of state, Mrs. Collins's Ohio teaching certification lapsed. After the parties' first child was born in 2000, they made a joint decision that Mrs. Collins should stay home to raise their children. Thus, the children and Mrs.

Collins were financially dependent upon Dr. Collins because he was the sole wage earner of the family.

{¶3} The parties separated in June 2007. Dr. Collins left the marital home and moved from Medina County to Wayne County. Shortly after the separation, Dr. Collins decided to quit his job at a hospital where he was earning approximately $200,000 annually in base salary and bonus. In November 2007, Dr. Collins filed a complaint for divorce. At that time, he had informed the hospital, but not Mrs. Collins, that he was resigning. The hospital asked him to stay. Eventually, he told Mrs. Collins that he had resigned from the hospital and planned to open a private practice.

{¶4} In February 2008, Dr. Collins left the hospital. He did not immediately establish a location for his practice and used other doctors' offices to see clients. This resulted in a loss of referrals. In August 2008, Dr. Collins established his own office location and began operating his medical practice. Although Dr. Collins earned income at the hospital for the first two months of 2008, his medical practice did not report significant income that year due to start-up expenses and substantial errors by his medical billing company which had failed to properly submit insurance claims.

{¶5} An evidentiary hearing took place before the magistrate in March 2009. The parties disputed what income should be imputed to Dr. Collins. His accountant projected Dr. Collins's current income at $29,400. Dr. Collins suggested that his income could be imputed at $75,000. Mrs. Collins argued that Dr. Collins's income should be imputed at $200,000 given that he unilaterally terminated his employment at the hospital. In considering the issue of spousal support and child support, the magistrate's central inquiry was whether or not Dr. Collins's decision to leave his position at the hospital with a substantial income to start his own

practice was for the purpose of reducing his income in the divorce proceedings. In considering both spousal and child support, the magistrate imputed minimum wage to Mrs. Collins and recommended that an annual income of $75,000 be imputed to Dr. Collins for purposes of calculating both child support and spousal support.

{¶6} Mrs. Collins filed objections to the magistrate's decision that focused primarily on the magistrate's imputation of income to Dr. Collins at an amount well below his income at the hospital. The trial court remanded the matter for further hearing on the parties' financial situation after expressing concern that Dr. Collins's decision to leave his hospital position may have been for improper reasons.

{¶7} Instead of a further hearing before the magistrate, at the parties' request, the trial court held a hearing. After that hearing, the trial court overruled in part and sustained in part Mrs. Collins's objections to the magistrate's decision. Specifically pertaining to Dr. Collins's income, the court concluded that, although it had been concerned that Dr. Collins's decision to leave his hospital position had left him "substantially underemployed," it stated that "its initial concern was unfounded" and imputed income of $100,000 for the purpose of computing child and spousal support. The trial court retained jurisdiction to modify spousal support, explicitly recognizing that Dr. Collins's income was likely to increase in the future and that his medical practice had "tremendous upside *** potential."

{¶8} The trial court granted the parties a divorce, divided the marital property and debts, and ordered Dr. Collins to pay spousal and child support. Mrs. Collins appeals and raises three assignments of error.

II

Assignment of Error Number One

IT WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO FIND EMORY TO BE VOLUNTARILY UNDEREMPLOYED, BUT THEN TO ONLY IMPUTE AN ARBITRARY INCOME LEVEL TO HIM AND FAIL TO [IMPUTE] UPON HIM HIS LAST EMPLOYMENT SALARY OF $200,000 PER YEAR."

Assignment of Error Number Two

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO IGNORE THE REVENUES THAT EMORY GENERATES IN HIS PRACTICE THAT ARE NOW DIRECTED TO SERVICING 'SEPARATE DEBT OBLIGATIONS' INCURRED SOLELY BY EMORY DURING THE PENDENCY OF THE DIVORCE PROCEEDING IN CALCULATION OF CHILD AND SPOUSAL SUPPORT OBLIGATION."

Assignment of Error Number Three

"IT WAS AN ABUSE OF DISCRETION BY THE TRIAL COURT TO ORDER SPOUSAL SUPPORT TO BE PAID BY EMORY TO KARIN IN THE NEGLIGIBLE AMOUNT OF ONLY $2,500 PER MONTH FOR MERELY FOUR YEARS IN DURATION."

{¶9} Mrs. Collins has raised three assignments of error. However, in light of our decision below, we find it necessary to consider her first assignment of error only. In her first assignment of error, Mrs. Collins has asserted that the trial court erred when, after it found Dr. Collins to be voluntarily underemployed, it merely imputed an arbitrary income figure to him. As evidenced by the language contained in this assignment of error, Mrs. Collins broadly challenges the trial court's imputation of income to Dr. Collins and thus we find it appropriate to examine whether there was error in the manner in which the trial court imputed income. This inquiry in turn implicates the trial court's determinations relative to the award of spousal and child support.

{¶10} In order to review the propriety of the manner in which the trial court "imputed" income, it is necessary to examine the separate statutory schemes established by the Ohio legislature when considering spousal support and child support.

**Spousal Support**

{¶11} Upon the request of either party and after the court determines the division or disbursement of property, the trial court may award "reasonable spousal support" to either party. R.C. 3105.18(B). The trial court has latitude to award spousal support in real or personal property or both, or by decreeing a sum of money paid in gross or by installments or from future income, as the trial court considers equitable. Id.

{¶12} Pursuant to R.C. 3105.18(C)(1), in determining whether spousal support is "appropriate and reasonable" and, if so, in determining the nature of the support, including its amount, terms, manner of payment and duration, the trial court must consider *all* of the thirteen factors set forth in R.C. 3105.18(C)(1), as well as "[a]ny other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1)(n).

{¶13} The thirteen factors enumerated in R.C. 3105.18(C)(1) include consideration of the income of the parties from all sources, including income derived from the property division made by the court; the relative earning abilities of the parties; their ages and physical, mental, and emotional conditions; their retirement benefits; the duration of the marriage; their standard of living during the marriage; the relative extent of education of the parties; their relative assets and liabilities; the contribution of each party to the education, training, or earning ability of the other party; and the lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1). See, also, R.C. 3119.022 (setting forth the child support computation worksheet).

{¶14} Furthermore, the legislature has specified that in determining whether spousal support is reasonable, "each party shall be considered to have contributed equally to the production of marital income." R.C. 3105.18(C)(2).

**"Income of the parties"**

{¶15} The first spousal support factor that the court must consider is "the income of the parties, from all sources," including income derived from property that the court has disbursed or distributed to a party. R.C. 3105.18(C)(1)(a).

{¶16} The term "income" includes "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code[.]" Id. Thus, in considering this first factor, the court is charged with examining the actual income of the parties from all sources and income derived from any divided property. Unlike the child support statute, the spousal support statute does not direct the court to consider the "potential income" of a spouse when considering the "income of the parties, from all sources." R.C. 3119.01(C)(5). This makes sense given the distinct nature and focus pertaining to spousal and child support, respectively. For example, the overarching focus of the child support inquiry is the best interest of the children and parental responsibility toward the children. That inquiry entails a determination of precise monetary figures that are entered into a worksheet so as to arrive at a presumptively correct child support figure. In contrast, the focus of the spousal support inquiry is upon the two spouses and entails the comprehensive consideration of multiple factors all of which must be weighed in arriving at a reasonable spousal support award. Unlike the child support inquiry, the objective is not to ascertain a precise income figure which can be employed in a worksheet. In evaluating spousal support, there is no worksheet and no presumptively correct amount of spousal support. Rather,

a spouse's actual income from all sources is but one of many factors used to arrive at reasonable support to be given from one spouse to the other.

{¶17} In the context of this case, at the time of the initial hearing, Mrs. Collins derived no income from any source. There was no evidence that she would derive income from any property distributed to her. Dr. Collins was the sole income earner. At the time of the first hearing, he had earned income from the hospital and his newly formed practice. At the time of the second hearing, Mrs. Collins had obtained part-time employment and was earning $23,000 annually. Dr. Collins's actual 2009 income from all sources was the sum of $36,000, reflecting his regular salary draw and $17,844.58 representing the profit from the medical practice for a total of $53,844.58.

**"Relative earning ability"**

{¶18} R.C. 3105.18(C)(1)(b) directs the court to examine the relative earning ability of the parties. In essence, the court is directed to consider the earning ability of one party and compare it to the earning ability of the other party. It may appear that this inquiry is the same as the inquiry made when a court considers imputation of income for purposes of child support. However, while the inquiries contain some similarities in terms of the evidence that the court may examine, the end result is quite different. With respect to child support, when a court examines the earning capacity of a parent who is voluntarily unemployed or underemployed, it does so with a view toward imputing a specific sum of income to that parent. In turn, that sum will be combined with other gross income to arrive at a total gross income figure which will be used for the child support calculation.

{¶19} By contrast, when examining relative earning ability of the parties, consideration of earning capacity will allow the court to juxtapose one spouse's earning ability against the

other spouse's earning ability. Clearly, if one spouse has substantial earning ability and the other does not, then this disparity will be a factor to be considered along with the other statutory factors when arriving at reasonable spousal support. Unlike the child support statute, there is no language in R.C. 3105.18 that directs the trial court to "impute" income. Instead, the court is directed to examine the relative earning ability of each party. The end result is not to arrive at a specific figure so as to "impute" income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term.

{¶20} In the context of this case, at the initial hearing, there was no evidence presented concerning a monetary figure for Mrs. Collins's earning ability. By contrast, the evidence established that Dr. Collins's earning ability exceeded $200,000 annually. At the second hearing, there was additional evidence concerning Mrs. Collins's earning ability because she became employed as a part-time tutor.

**Misconduct and improper motive**

{¶21} R.C. 3105.18 does not specifically direct the court to examine financial misconduct or whether a party's conduct evidences intent to avoid payment of spousal support. Nonetheless, if the court determines that such evidence is relevant and equitable in its determination of spousal support, it has discretion to consider it as permitted under R.C. 3105.18(C)(1)(n). For example, a court could consider one spouse's unilateral dissipation of assets as relevant and equitable to its consideration of whether spousal support is appropriate and reasonable as well as its amount, length, and duration. See *Huffman v. Huffman* (June 21, 2000), 7th Dist. No. 98 CA 136. A court could also consider one spouse's decision to leave his or her secure and lucrative employment. Even absent an improper motive, one spouse's decision to

leave secure and lucrative employment can be highly relevant and raise equitable considerations given the circumstances of the parties. See R.C. 3105.18(C)(1)(n). On the other hand, a spouse's decision to leave his or her employment could be less relevant and raise fewer equitable concerns if, for example, the parties are independently wealthy and leaving the employment does not materially alter their financial circumstances.

{¶22} In the matter before us, both the magistrate and trial court were concerned with discerning whether Dr. Collins had an improper motive when he voluntarily left his lucrative employment. Although motive is relevant, even absent improper motive, the court could determine that it was both relevant and equitable to consider his conduct when evaluating an award of spousal support. R.C. 3105.18(C)(1)(n). The court could properly consider that Dr. Collins made a unilateral decision to forego his well-paying and secure employment with an established income when he knew he would be divorcing; his wife and children were dependent upon him as the sole wage earner; and the parties would of necessity have to establish two households, thereby increasing their financial obligations. In other words, even if the court did not feel Dr. Collins had a specific intent to thwart his support obligations, the court could determine it was relevant and equitable to consider his choices along with the other mandatory factors when arriving at a spousal support award and in discerning its nature, amount and duration.

**Child Support**

{¶23} Chapter 3119 governs child support orders. In contrast to the spousal support statute which directs the court to examine the relative earning ability of the parties, R.C. 3119.01 includes consideration of the "potential income" of a parent as well as the actual gross income earned by the parent when calculating child support. This statutory scheme contemplates

arriving at a total income figure which is entered into a child support worksheet. The worksheet contains standard adjustments for various items such as health care costs and child care. After making all of the required adjustments, the computed amount becomes the presumptively correct amount of child support. See R.C. 3119.023; R.C. 3119.03.

{¶24} R.C. 3119.01(C)(5) defines "income" as used in Chapter 3119 as:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent."

{¶25} R.C. 3119.01(C)(7) defines "gross income" as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable[.]" The definition broadly identifies a wide spectrum of types and sources of income, but excludes sources such as government disability benefits and nonrecurring or unsustainable income or cash flow. See R.C. 3119.01(C)(7)(a)-(f). Moreover, the parent's gross income must be supported by evidence in the record. R.C. 3119.05(A) requires that the trial court verify the parent's current and past income by electronic means or by suitable documentation.

{¶26} If a parent is unemployed or underemployed, "income" is defined differently. Under those circumstances, "income" is "the sum of the gross income of the parent *and* any potential income of the parent." (Emphasis added.) R.C. 3119.01(C)(5)(b). For a parent who the court determines is voluntarily unemployed or underemployed, R.C. 3119.01(C)(11) defines "potential income" as the total of two items: (1) "imputed income" that the court determines the parent would have earned if fully employed, as determined from ten criteria, R.C. 3119.01(C)(11)(a); and (2) imputed income from nonincome-producing assets of a parent if the income is significant. R.C. 3119.01(C)(11)(b).

{¶27} Notably, the first paragraph of R.C. 3119.01(C)(11) qualifies the applicability of "potential income" to a "parent who the court *** *determines is voluntarily unemployed or voluntarily underemployed*[.]" (Emphasis added.) In light of the qualifying requirement that "potential income" applies to parents who the court determines are voluntarily unemployed or voluntarily underemployed, the court must first determine whether the parent is voluntarily unemployed or voluntarily underemployed. It is for this reason that we have "repeatedly held that, for purposes of calculating child support, the trial court cannot impute income to either party without first making a finding that the party is voluntarily unemployed or underemployed." *Musci v. Musci*, 9th Dist. No. 23088, 2006-Ohio-5882, at ¶11. The word "voluntarily" has not been defined by the legislature, and the Ohio Supreme Court has employed the Black's Law Dictionary definition of "voluntarily" when examining the meaning of voluntary underemployment in the context of the statute. See *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 111, n.2 (defining "voluntarily" as "done by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion."). A parent's intentional and uncoerced resignation from employment which results in either no employment or substantially less income in subsequent employment would be one example of a situation in which a parent is voluntarily unemployed or voluntarily underemployed.

{¶28} If the court determines that a parent is voluntarily unemployed or voluntarily underemployed, then it must determine that parent's potential income. Under R.C. 3119.01(C)(11)(a), potential income will include imputed income that the parent would have earned if fully employed as determined from the criteria listed in R.C. 3119.01(C)(11)(a)(i)-(x). These criteria include consideration of: (i) the parent's prior employment experience; (ii) the parent's education; (iii) the parent's physical and mental disabilities, if any; (iv) the availability

of employment in the geographic area in which the parent resides; (v) the prevailing wage and salary levels in the geographic area in which the parent resides; (vi) the parent's special skills and training; (vii) whether there is evidence that the parent has the ability to earn the imputed income; (viii) the age and special needs of the child for whom support is being calculated; (ix) the parent's increased earning capacity because of experience; and (x) any other relevant factor. R.C. 3119.01(C)(11)(a)(i)-(x).

**The trial court's determination**

{¶29} As noted above, this matter was initially heard before a magistrate who issued a decision addressing all of the matters at issue in the divorce proceedings. The magistrate indicated that because the determination of Dr. Collins's income for child support was related to the issue of spousal support, those issues would be considered together. With respect to consideration of both issues, the magistrate stated:

> "The Court needs to determine whether or not [Dr. Collins's] decision to leave the hospital with a substantial income and start his own private medical practice was for the purpose of reducing his income for these divorce proceedings which would result in a lower child support and spousal support order or whether or not he sincerely felt this was an appropriate time to make that break. Was the break from the hospital totally unrelated to the divorce proceedings?"

{¶30} The magistrate determined that Dr. Collins had not left his employment for the sole purpose of cheating Mrs. Collins and the children financially. Upon considering the imputation of income, the magistrate acknowledged that there was a large disparity between the $200,000 figure that Mrs. Collins argued should be imputed to Dr. Collins and the $29,400 that was represented to be his current projected earnings. The magistrate indicated that he did not feel that the court should impute $200,000, however, he felt that Dr. Collins's income for *child support and spousal support* purposes should be in excess of the $29,400 current earnings figure. Ultimately, the magistrate recommended that the court impute $75,000 to Husband. As indicated

by the language contained in the magistrate's decision, the magistrate appeared to be "imputing" income for both child support and spousal support purposes.

{¶31} Mrs. Collins objected to the magistrate's decision. Upon review, the trial court first acknowledged Dr. Collins's historical income and most recently his earnings of "$200,000 plus" in 2007. It then found that just a few months after filing for divorce, Dr. Collins "decided to quit his well-paying job and go into private practice." The court stated that Dr. Collins's "timing and planning could not have been worse" and "[a]s a result of [Dr. Collins's] bad decisions, his CPA testified that he would net less than $30,000 in his first year of private practice." Although the court acknowledged that it could not say that Dr. Collins left the hospital in order to deprive Mrs. Collins of spousal support, "his choice left him substantially underemployed." The trial court remanded the matter back to the magistrate to update the parities' financial condition and to recalculate support spousal and child support.

{¶32} In lieu of further proceedings before the magistrate, the parties presented additional evidence directly to the trial court. At the time of this hearing, Mrs. Collins had found some part-time employment, earning $23,000 per year. Dr. Collins presented testimony that during the summer of 2008, he began to place himself on a regular draw of $8,000 per month. His accountant stated that his actual earnings for the year 2009 would be $53,844.58.

{¶33} In its final judgment entry, the trial court acknowledged that it had been concerned that Dr. Collins's decision to leave his job had left him substantially underemployed. However, it found that after hearing the testimony, it felt that "its initial concern was unfounded." In its judgment, the trial court stated that the "testimony actually lends support to the Magistrate's figure of $75,000 for [Dr. Collins]. The court believes it should be closer to $100,000 and will use that figure in its child support computation." The trial court then adopted

the magistrate's spousal support recommendation, imputed $100,000 to Dr. Collins, and included this figure in its child support calculation. It is against this backdrop that Wife advances her assignments of error.

**Implicit finding of voluntary underemployment**

{¶34} In its final judgment entry, the trial court did not expressly state that Dr. Collins was voluntarily underemployed. However, as delineated in R.C. 3119.01(C)(11)(a), the trial court could not have proceeded to impute income to Dr. Collins unless it had determined that he was voluntarily underemployed. It is undisputed that income was actually imputed to Dr. Collins. As the dissent correctly emphasizes, whether the trial court actually "imputed" income as contemplated under R.C. 3119.01 may be determined by examination of the facts and circumstances of the case, not the label used by the trial court. See *Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, at ¶10 (concluding that the trial court incorrectly stated that it had "imputed" income to the parent because the income figure was derived from evidence of his actual investment income and not an imputation of income). Conversely, despite the trial court's failure to use the label here, it is clear from the record that it imputed income to Dr. Collins because there was no evidence before it that his actual income was $100,000.

{¶35} Moreover, our review of the transcript of the proceedings confirms that Dr. Collins did not dispute that he was voluntarily underemployed and that the central issue before the court was the amount of income that should be imputed to him. Although Dr. Collins argued he should be imputed a much lower income than the $200,000 figure advanced by Mrs. Collins, he did not dispute the explicit statement of her counsel that "[t]he court has already found him to be voluntarily underemployed."

{¶36} Our precedent is clear that the trial court must make an express rather than implicit finding in its journal entry that a spouse is voluntarily underemployed or unemployed before imputing income. See, e.g., *Irish v. Irish,* 9th Dist. Nos. 09CA009577 & 09CA009578, 2010-Ohio-403, at ¶9; *Misleh v. Badwan,* 9th Dist. No. 24185, 2009-Ohio-842, at ¶6-8; *Musci v. Musci*, 9th Dist. No. 23088, 2006-Ohio-5882, at ¶11; *Ramskogler v. Falkner,* 9th Dist. No. 22886, 2006-Ohio-1556, at ¶13; *Marek v. Marek,* 9th Dist. No. 21886, 2004-Ohio-5556, at ¶14 (construing former R.C. 3113.215(A)(5)).

{¶37} This Court agrees that the evidence supports a finding that Dr. Collins was voluntarily underemployed as the uncontroverted evidence established that Dr. Collins made an uncoerced and voluntary decision to resign from his employment wherein he went from $200,000 in annual income to $29,400 and later $53,844.58 in annual earnings. See, e.g., *Brakora v. Haudenschield* (Nov. 22, 1995), 3d Dist. No. 6-95-9, (physician was voluntarily underemployed where he resigned from lucrative practice with earnings of over $500,000 and earned less than $50,000 in subsequent employment); *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267 (dentist was voluntarily underemployed where he made the unilateral decision to sell his lucrative dental practice during the divorce proceedings, thereby reducing his income from over $300,000 to approximately $150,000-$170,000).

{¶38} The dissent emphasizes that Dr. Collins should not be shackled to his former job at the hospital, citing this Court's decision in *Knouff v. Walsh-Stewart*, 9th Dist. No. 09CA0075, 2010-Ohio-4063, at ¶30. In that case we emphasized that "[p]arents who are subject to support orders are as free as those who are not to adjust their employment to conform to their opportunities and to their disadvantages as well. However, they may not use their separation or divorce to avoid their responsibilities, and their children should not suffer from needs that would

have been met by their parents had their marriage not ended or separation not ensued." Id., quoting *Palmer v. Palmer* (June 14, 1995)*,* 2d Dist. No. 94-CA-112, at *3. Thus, although Dr. Collins was free to start his own practice, he was not free to avoid the consequences of his choice and to place the burdens of his choice upon his children. Moreover, this case presents a stark contrast to *Knouff.* In that case, the father lived with the mother for a time and they had a child out of wedlock. The mother also had two other minor children and thus, was the primary caretaker of three minor children. Prior to the birth of the parties' child, the mother was working at a job requiring her to travel 60 to 75 minutes. The mother took two jobs that were closer to home after the birth of the child and while still nursing. The trial court found that mother was not voluntarily underemployed and that the change in employment benefited the child. On appeal, Mr. Knouff challenged the trial court's factual determination that Ms. Walsh was not voluntarily underemployed. In affirming the trial court, our central inquiry was based upon the best interests of the child and we acknowledged that the evidence supported the trial court's finding that the change in employment was to the child's advantage. We also noted that, although the mother's income was reduced, there was also evidence that transportation costs and day care expenses were reduced as well. In light of the above, we necessarily find reversible error in the court's failure to expressly state that Dr. Collins was voluntarily underemployed. See *Irish*, supra*.*

**Use of the $100,000 figure**

**{¶39}** Mrs. Collins also argues that the trial court's use of the $100,000 figure was arbitrary. Unfortunately, the court did not offer any analysis when it stated "[t]he court believes [Dr. Collins's income] should be closer to $100,000 and will use that figure in its child support computation."

{¶40} When a trial court engages in a multi-factor analysis, we have held that the trial court is not necessarily required to address each and every factor in its judgment entry. Although in engaging in appellate review it is very helpful for the court to specifically address each factor, this court has recognized that sometimes evidence may not have been adduced on a particular factor, thus making it unnecessary for the court to address it. In addition, although the trial court has not specifically itemized each factor, it is sometimes apparent from the analysis contained in its judgment that it has considered and evaluated the factors.

{¶41} However, it is axiomatic that a reviewing court should be able to discern both the amount and reasons for imputing income. *Rock*, 67 Ohio St.3d at 113. In the case before us, we are unable to discern the trial court's reasoning for imputing its income figure of $100,000. In this regard, it is of some concern that the magistrate suggested that Dr. Collins's intent in leaving his employment was the central consideration in the decision to impute income to him. The fact that the magistrate was satisfied that Dr. Collins did not leave his employment to thwart his support obligations suggests that, had he found otherwise, the result might have been different and perhaps that the magistrate might have considered a higher imputation figure.

{¶42} In its initial journal entry, the trial court also expressed its concern with Dr. Collins's poor choice in leaving his lucrative employment in the midst of a divorce. In its final journal entry, the trial court seems to have been satisfied that Dr. Collins might not have had any ill intent. It is unclear whether the trial court shared the magistrate's view that Dr. Collins's subjective motives were centrally determinative of the imputation analysis. In light of the record before us, the evaluation of spousal support and child support in this matter seems to have been guided by a mistaken notion that proof that the parent left his employment for an improper

reason was determinative of whether a spouse could get greater spousal support and whether a parent should be imputed with more income in calculating child support.

{¶43} With respect to child support, the Ohio Supreme Court has emphasized that "[t]he parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." *Rock*, 67 Ohio St.3d at 111. "Nothing in the statute requires proof that an obligor intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability." Id. Rather, the central inquiry under the statutory scheme is the best interests of the children. Id. Notably, the Ohio Supreme Court specifically rejected the proposition that a parent is voluntarily underemployed within the meaning of the statute only if the parent purposefully reduced his/her earnings in an effort to avoid the child support obligation. Id.

{¶44} In light of Dr. Collins's voluntary underemployment, the court was charged with determining his potential income as contemplated under R.C. 3119.01(C)(5) and in keeping with the overarching consideration of the best interests of the children. Relevant to this consideration was the uncontroverted evidence that Dr. Collins has a specialized niche as a pediatric gastroenterologist. He voluntarily left employment where he would have earned "$200,000 plus" annually. The evidence also indicated that upon notifying the hospital of his intention to leave, he was asked to stay. Thus, it was undisputed that at the time of the divorce, Dr. Collins had available to him employment that allowed him to earn at least $200,000 annually in his specialized field of pediatric gastroenterology. There was no evidence that Dr. Collins could not have continued to command that income at the hospital. In addition, because his employment contained a productivity bonus, Dr. Collins had the ability to surpass his established income

level. Dr. Collins's education, special skills, and training all indicated that he could earn "$200,000 plus" annually and there was no evidence to the contrary.

{¶45} In light of the uncontroverted evidence which was relevant to the considerations contained in R.C. 3119.01(C)(5), our inability to discern the trial court's reasoning for imputing $100,000 to Dr. Collins, as well as the court's consideration of Dr. Collins's subjective intentions in leaving his employment, we find reversible error in the trial court's determination of Dr. Collins's potential income.

## Spousal Support

{¶46} Mrs. Collins has made a number of challenges to the court's spousal support determination. She has argued about the court's "imputation" of income in the context of spousal support. We have emphasized above that the spousal support statute does not direct the court to "impute" income, rather it contemplates a determination of the parties' relative earning ability. Notwithstanding, this Court is concerned that the court's determination that Dr. Collins did not possess ulterior motives in leaving his employment was the paramount consideration in determining spousal support. We emphasize that the trial court was required to consider *all* of the statutory factors contained in R.C. 3105.18(C) as made relevant by the evidence. Whether Dr. Collins had ulterior motives or not, his unilateral decision to leave his secure and lucrative employment, was certainly both relevant and raised equitable concerns as contemplated by R.C. 3105.18(C)(1)(n). We note that there is additional evidence before the court of direct relevance to the express statutory factors that the court must consider, as well as significant evidence that could be considered as relevant under R.C. 3105.18(C)(1)(n). The trial court did not provide any analysis of the evidence and its application of the evidence to the statutory factors. In light of the magistrate's seemingly determinative focus upon Dr. Collins's subjective motives for leaving his

employment when it considered both spousal support and child support, and the absence of analysis contained in the final judgment, we cannot discern whether the trial court agreed with the magistrate's partially incorrect analysis. We find it unclear whether the trial court considered and what weight it placed upon all of the factors enumerated in R.C. 3105.18(C) when it arrived at spousal support and whether the magistrate's determination that Dr. Collins did not have improper intent negated *any* consideration of Dr. Collins's choice to leave his employment under R.C. 3105.18(C)(1)(n). Accordingly, we remand the matter back to the trial court for further consideration of its spousal support award consistent with this Court's opinion.

{¶47} Because we are remanding this issue back to the trial court, we decline to address Mrs. Collins's additional spousal support challenges as they may be rendered moot upon the court's reconsideration of spousal support.

## III

{¶48} For the reasons stated above, Mrs. Collins's first assignment of error is sustained. This Court declines to address her second and third assignment of error as moot. The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
BELFANCE, P. J.
CONCUR

WHITMORE, J.
DISSENTS, SAYING:

{¶49} I respectfully dissent because I would affirm the trial court's decision with respect to both the spousal and child support awards.

{¶50} Initially, I note that an appellate court "reviews the trial court's determination of child and spousal support for an abuse of discretion." *Dunlap v. Dunlap*, 9th Dist. No. 23860, 2008-Ohio-3201, at ¶16. While the decision to award support is discretionary, an appellate court reviews the factual findings to support that award under a manifest weight of the evidence standard. *Glaser v. Glaser*, 9th Dist. No. 05CA0014-M, 2006-Ohio-2555, at ¶6. Thus, this Court reviews the record to determine if there is competent, credible evidence to support the trial court's factual findings. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶24, quoting *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus (explaining that in civil cases, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence").

**{¶51}** Next, I acknowledge that the trial court was caught between a rock and a hard place in this divorce proceeding. It was required to determine an income level for Emory Collins ("Husband") in an acrimonious proceeding at a time when Husband was experiencing extreme fluctuations in his earnings. Husband's income had both increased and decreased significantly in recent years, stemming from several transitions following his completion of medical school and specialized training as a pediatric gastroenterologist.

**{¶52}** In 2005, Husband had earned approximately $68,000 while working as a physician in Michigan. In January 2006, Husband obtained a staff position at Akron Children's Hospital, where his salary more than doubled to approximately $160,000, and peaked at slightly over $200,000 the following year. For the two months he remained at the hospital in 2008, he had earned nearly $33,000 in salary and was on track to receive a year-end productivity bonus of $25,000. Husband decided to leave his staff position at the hospital in the summer of 2007 and start his own private practice. Husband testified that he expected to be able to earn close to what he was making when he left the hospital once his practice was established.

**{¶53}** Husband sought the advice of an attorney, accountant, banker, and a practice consultant during the transition. Upon leaving the hospital, Husband experienced several setbacks in starting up his practice, none of which were of his own making. Husband was expected to have a net income in 2008 of approximately $30,000 from his private practice endeavors. The accountant testified Husband's income was expected to increase significantly. Accordingly, Husband recommended in his trial brief that the court establish his income somewhere in the range of $75,000-$100,000 for the purposes of support, given the financial projections for his practice in 2009 of $30,000 and his $33,000 in income that year from the

hospital. Karin Collins ("Wife") argued, however, that the trial court should impute an income of $200,000.

{¶54} The magistrate heard lengthy testimony on the financial situation of the parties and ultimately concluded that an income of $75,000 was reasonable and appropriate for Husband. Consequently, the magistrate recommended an award of spousal support to Wife in the amount of $2,500 for a duration of four years and child support of $488 per month. The magistrate recommended retaining jurisdiction over the amount and duration of support. Wife objected and argued that Husband's income should be set at $200,000; that is, the amount Husband was earning before his resignation from the hospital.

{¶55} In his report the magistrate wrote the following:

"The Court needs to determine whether or not [Husband's] decision to leave the hospital with a substantial income and start his own private medical practice was for the purpose of reducing his income for these proceedings which would result in a lower child support and spousal support order or whether or not he sincerely felt this was an appropriate time to make that break. Was the break from the hospital totally unrelated to the divorce proceedings?

"In considering [Husband's] evidence and testimony, the Magistrate is not convinced he made this move for the sole purpose of cheating [Wife] and the children financially. The move came with some unexpected difficulties, otherwise [Husband's] current income would be more in line with the projections made by his CPA or at least in excess of his current actual income."

Later in his report, the magistrate repeated that he did not believe Husband left the hospital to start his medical practice with any motive other than to have his own medical practice.

{¶56} After review of the magistrate's report, the trial court concluded that it:

"[Could] not say that [Husband] left the hospital in order to deprive [Wife] of spousal support. But [Husband's] choice left him substantially underemployed.

"The court has decided to remand this case to the Magistrate. He shall take testimony in order to update the financial condition of the parties. *He shall then recalculate spousal support and child support.*" (Emphasis added.)

Thus, the trial court agreed with the magistrate that Husband's motives were not improper. However, because of the substantial reduction in Husband's actual earnings, the court wanted the magistrate to recalculate both support awards based upon updated information of the income of both parties. This second hearing, however, was not held before the magistrate, but, at the request of both parties was held before the trial court in December 2009.

{¶57} At the second hearing, Husband's accountant testified that based on his projections for 2009, he anticipated Husband earning approximately $54,000, and based on the $3,000 bi-weekly draw established during that year, he projected Husband's income to reach at least the $78,000 level for 2010, if not more based on increased productivity and the use of a new billing service. Following that hearing, the trial court concluded, in relevant part, that:

> "[It] was concerned [before the December hearing]*** that [Husband's] decision to leave his job at Children's Hospital and open his own practice had left him substantially underemployed. After hearing the testimony *** the court believes its initial concern was unfounded. *** The court believes [Husband's income figure] should be closer to $100,000 and will use that figure in its child support computation."

It is from this order that Wife has appealed. I read the foregoing statements of the trial court as evidence of the following: first, its attempt to establish Husband's income level for the purposes of spousal support, after having considered the factors set forth in R.C. 3105.18(C); and second, an express finding by the trial court that Husband was not, in fact, voluntarily underemployed for the purposes of child support, as determined by R.C. 3119.01(C)(11)(a).

{¶58} With respect to spousal support, this Court and others have affirmed a trial court's decision to average a party's income for the purpose of support in cases where there have been significant fluctuations in income near the time of the parties' divorce, as was the case here. See, e.g., *Nagel v. Nagel*, 9th Dist. No. 09CA009704, 2010-Ohio-3942, at ¶33-38 (concluding the trial court did not abuse its discretion in computing husband's income based on a four-year

average of his past income); *Shreyer v. Shreyer*, 5th Dist. No. 08CA17, 2008-Ohio-7013, at ¶15 (calculating husband's income for purposes of support based on an average of his three-year income); *Kreilick v. Kreilick*, 6th Dist. No. S-04-006, 2005-Ohio-3041, at ¶41 (addressing support award where husband's income varied in recent years from $40,000 to a loss of $9,000).

{¶59} The trial court did not state that it was imputing income, as the majority contends, nor does the spousal support statute provide for such action. See *Johnson v. Johnson*, 9th Dist. No. 24159, 2008-Ohio-4557, at ¶18 (concluding that "there is no underemployment provision in R.C. 3105.18"). Rather, the trial court had to establish a realistic income level based on Husband's fluctuating income to date and appropriately relied on a combination of his historical performance and near-term estimates of his income as provided by his accountant.

{¶60} With respect to the child support award, contrary to the majority's assertion, the trial court made an express finding regarding underemployment. That is, the trial court concluded that Husband was not voluntarily underemployed. Even if I thought the trial court had imputed income to Husband, which I do not, this Court has affirmed a trial court's decision to impute income even in the absence of an express finding of voluntary under- or unemployment. See *Miller v. Miller*, 9th Dist. No. 07CA0061, 2008-Ohio-4297, at ¶21-26. Furthermore, even when the trial court has expressly stated it is, in fact, "imputing income" to a party, this Court has concluded based on the record that the court did not, in actuality, do so. See *Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, at ¶10 (concluding that "[a]lthough the trial court stated that it 'imputed' income to Father, it is apparent *** that the trial court was not engaging in an inquiry as to whether Father was voluntarily under- or unemployed so as to impute potential income"). Here, the trial court did not state that it imputed income and it

unequivocally expressed that Husband was not underemployed. The majority's assertion otherwise is, I believe, mistaken.

**{¶61}** This Court has recently held that:

"Just because a parent has a drop in income due to a voluntary choice, [it] does not necessarily mean [he] is voluntarily underemployed. The test is not only whether the change was voluntary, but also whether it was made with due regard to [his] income-producing abilities and [his] duty to provide for the continuing needs of the child concerned. [He] must show an objectively reasonable basis for terminating or otherwise diminishing [his] employment, which is measured by examining the effect of [his] decision on the interests of the child. The system for the determination and enforcement of child support obligations of parents who are separated or divorced *** was never intended to shackle parents to jobs that they held at the time of divorce or separation[.] *** Parents who are subject to support orders are as free as those who are not to adjust their employment to conform to their opportunities and to their disadvantages as well. However, they may not use their separation or divorce to avoid their responsibilities, and their children should not suffer from needs that would have been met by their parents had their marriage not ended or separation not ensued." (Internal quotations and citations omitted.) *Knouff v. Walsh-Stewart*, 9th Dist. No. 09CA0075, 2010-Ohio-4063, at ¶30.

In my judgment, the trial court in the present matter struck the appropriate balance between shackling Husband to his former position and allowing him to reach out for a private practice and the long term benefits such a practice promised: a more flexible work schedule, a potentially greater income, and more time with his children. While Husband's income was sharply reduced, there is no evidence in the record, and Wife does not contend, that Husband's earning potential was not substantial or potentially in excess of what he could earn if he spent the rest of his career in a hospital staff position. Moreover, Husband's new employment has given him greater time with his children – something that falls squarely in the realm of his "duty to provide for the continuing needs of the child[ren]" as noted in *Knouff*. Husband now has increased time to

spend with the children given the flexibility of his work schedule, which now allows him to be with them after school and on the weekends.

{¶62} I am concerned with the majority's reference to the fact that Wife did not approve of, or consent to, Husband's decision to change employment. I believe that the issue of consent is irrelevant and should not color a trial court's decision regarding support issues. If Husband unilaterally decided to quit his job or quit over Wife's vigorous objections and the same chain of events had occurred, leaving the couple financially strapped as a result, but the parties had remained married, they would be in the same position they are now (save the expense of Husband's separate residence). Under those circumstances, Wife would have no remedy against Husband's actions, so I see no reason why her consent or lack thereof should have any effect on Husband's financial obligations to his family, merely because his decision to change jobs coincided with the timing of the parties' divorce proceeding.

{¶63} I note that the record indicates that substantial loans that had been on deferred (interest only) status would, almost immediately, become active and require substantial additional monthly installment payments by Husband and that the trial court retained jurisdiction over both the amount and duration of spousal support. Under all of the circumstances in this case, I question whether the interests of the parties and their children will be served by a reversal of this case in order that the trial court supply a more definitive statement of how it reached the support awards in this matter.

{¶64} Because there was competent, credible evidence to support the trial court's decision to establish Husband's income at $100,000, the trial court did not abuse its discretion in determining the spousal support or the child support award based on its factual findings. Accordingly I would affirm both awards. In addition, I would also affirm the child support

award on the ground that Wife did not did ask the trial court to deviate from the presumptively valid child support award calculated in the child support worksheet.

{¶65} For the foregoing reasons, I would affirm the trial court's judgment in this instance. Accordingly, I dissent.

APPEARANCES:

RENEE J. JACKWOOD, Attorney at Law, for Appellant.

R. J. HELMUTH,  Attorney at Law, for Appellee.