[Cite as *Valentine v. Valentine*, 2012-Ohio-4202.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

LILLIAN VALENTINE

    Appellant

    v.

JAMES REED VALENTINE

    Appellee

C.A. No.     11CA0088-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10DR0032

DECISION AND JOURNAL ENTRY

Dated: September 17, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} James and Lillian Valentine divorced after 24 years of marriage. While they agreed on most issues, they did not agree on whether Mr. Valentine should have to pay spousal support. In recent years, Mr. Valentine had earned up to $57,000 working for a printing company. The company fired him, however, after he was sentenced to a year in jail for operating a motor vehicle under the influence of alcohol. Mr. Valentine testified that it was unlikely that he could get his job back after he was released because the company had already rehired him after he had gotten out of jail for a prior offense and had told him that it was his last chance. He said that, because he would not be able to drive for the next four years, the best job that he could probably get once he got out of jail would be as a cook making ten dollars an hour. The trial court determined that Ms. Valentine was entitled to spousal support and calculated the amount based on Mr. Valentine's ten-dollars-an-hour rate instead of the rate he earned before his

conviction. Ms. Valentine has appealed, arguing that the trial court incorrectly refused to impute additional income to Mr. Valentine and incorrectly refused to order him to pay the support award as a single lump sum. We affirm because the court exercised proper discretion when it crafted the spousal support award.

## SPOUSAL SUPPORT

**{¶2}** Ms. Valentine's first assignment of error is that the trial court incorrectly found that Mr. Valentine is not voluntarily underemployed for the purpose of determining spousal support. Her second assignment of error is that the court exercised improper discretion when it failed to order Mr. Valentine to pay her spousal support award as a single lump sum.

**{¶3}** Regarding the amount of the spousal support award, Section 3105.18(C)(1) of the Ohio Revised Code provides that, "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider [the fourteen] factors [listed in that section]." Among the factors that the court must consider are "[t]he income of the parties, from all sources" and "[t]he relative earning abilities of the parties." R.C. 3105.18(C)(1)(a), (b). The court must also consider "[a]ny other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1)(n).

**{¶4}** Ms. Valentine has argued that the trial court should have imputed at least $53,000 in income to Mr. Valentine. Under Section 3105.18(C)(1), however, the court did not have to specifically consider whether Mr. Valentine was voluntarily unemployed or whether it should impute income to him. As this Court explained in *Collins v. Collins*, 9th Dist. No. 10CA0004, 2011-Ohio-2087, "[u]nlike the child support statute, the spousal support statute does not direct the court to consider the 'potential income' of a spouse when considering the 'income of the

parties, from all sources.'" *Id*. at ¶ 16 (quoting R.C. 3119.01(C)(5)). "This makes sense given the distinct nature and focus pertaining to spousal and child support, respectively. For example, the overarching focus of the child support inquiry is the best interest of the children and parental responsibility toward the children. That inquiry entails a determination of precise monetary figures that are entered into a worksheet so as to arrive at a presumptively correct child support figure. In contrast, the focus of the spousal support inquiry is upon the two spouses and entails the comprehensive consideration of multiple factors all of which must be weighed in arriving at a reasonable spousal support award. Unlike the child support inquiry, the objective is not to ascertain a precise income figure which can be employed in a worksheet. In evaluating spousal support, there is no worksheet and no presumptively correct amount of spousal support. Rather, a spouse's actual income from all sources is but one of many factors used to arrive at reasonable support to be given from one spouse to the other." *Id*.

{¶5} A trial court's examination of the relative earning ability of the parties is not the same inquiry as "when a court considers imputation of income for purposes of child support." *Collins v. Collins*, 9th Dist. No. 10CA0004, 2011-Ohio-2087, ¶ 18. "[W]hile the inquiries contain some similarities in terms of the evidence that the court may examine, the end result is quite different. With respect to child support, when a court examines the earning capacity of a parent who is voluntarily unemployed or underemployed, it does so with a view toward imputing a specific sum of income to that parent. In turn, that sum will be combined with other gross income to arrive at a total gross income figure which will be used for the child support calculation." *Id*. "By contrast, when examining relative earning ability of the parties, consideration of earning capacity will allow the court to juxtapose one spouse's earning ability against the other spouse's earning ability. Clearly, if one spouse has substantial earning ability

and the other does not, then this disparity will be a factor to be considered along with the other statutory factors when arriving at reasonable spousal support. Unlike the child support statute, there is no language in R.C. 3105.18 that directs the trial court to 'impute' income. Instead, the court is directed to examine the relative earning ability of each party. The end result is not to arrive at a specific figure so as to 'impute' income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term." *Id*. at ¶ 19; *see also Johnson v. Johnson*, 9th Dist. No. 24159, 2008-Ohio-4557, ¶ 18 ("[T]here is no underemployment provision in R.C. 3105.18.").

{¶6} The Valentines married in 1986 and had two children, both of whom were emancipated at the time of the divorce. According to Ms. Valentine, Mr. Valentine was an alcoholic throughout the marriage. After enduring his behavior for 20 years, she began seeing another man. Mr. Valentine testified that, after Ms. Valentine began her affair, she only came home to shower and change her clothes. He admitted that he served 135 days in jail in 2008 for operating a motor vehicle under the influence of alcohol and served 180 days in jail in 2009 for a similar offense. He testified that his employer fired him after his second conviction, but rehired him after he got out of jail. He said that it fired him again, however, when he was sent back to jail for his third operating-under-the-influence conviction.

{¶7} At the time of the hearing, Mr. Valentine was still serving his one-year jail term for the third offense. He testified that he would ask the printing company to rehire him after he got out of jail, but did not think it was likely because the last time it hired him it had told him that it was his "last chance." He said that one of the consequences of his conviction was that he could not drive for four years. Because there are no other printing companies in the vicinity, Mr.

Valentine opined that the driving sanction would limit his employment prospects to cooking at a restaurant near his home for ten dollars an hour.

{¶8} Although recognizing that it was Mr. Valentine's fault that he lost his job, the trial court determined that Ms. Valentine's spousal support award should be based on a "realistic" view of his earning capability after he is released from jail. Noting that Ms. Valentine's income was approximately $17,000, and that she had been involved in a four-year affair, the court found that an award of $130 per month for 98 months was reasonable and appropriate. *See Zimmie v. Zimmie*, 11 Ohio St. 3d 94, 96 (1984) ("Although R.C. 3105.18 . . . does not list marital misconduct, . . . it may be a relevant factor in the court's determination [of spousal support].").

{¶9} Ms. Valentine did not present any evidence regarding the level of income that Mr. Valentine would be able to earn after he was released from jail. In fact, she testified that she was unsure whether he could even get a job in light of the economy and his drinking problem. Upon review of the record, we conclude that the trial court properly considered all of the factors required in determining an award of spousal support under Section 3105.18(C)(1) of the Ohio Revised Code and exercised proper discretion in fashioning the award. We also note that the court retained jurisdiction "over all aspects of spousal support," which will allow Ms. Valentine to move for a modification of the award if Mr. Valentine finds a better paying job than he expected. Ms. Valentine's first assignment of error is overruled.

{¶10} Regarding whether the court should have ordered Mr. Valentine to pay the support as a lump sum, Section 3105.18(B) of the Ohio Revised Code provides that "[a]n award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable." Ms. Valentine has argued that, because it was Mr. Valentine's fault that he

lost his job, and his lack of employment has rendered his ability to make monthly support payments suspect, the court should have calculated the present value of the total support award and paid her the amount in a lump sum out of his division of property. *See Murphy v. Murphy*, 5th Dist. No. CA 9413, 1994 WL 75563, *2 (Feb. 22, 1994) (concluding that the trial court did not err when it awarded "a lump sum spousal support award.").

**{¶11}** In *Murphy*, the trial court found that, because of Michael Murphy's history of financial misconduct, there was a "very real possibility [he] will not obey [the spousal support] order." *Murphy v. Murphy*, 5th Dist. No. CA 9413, 1994 WL 75563, *1 (Feb. 22, 1994). In this case, there was no evidence that Mr. Valentine had engaged in financial misconduct or that he had ever failed to follow an order of the court. While his lack of employment causes concern, the court may have properly considered the fact that his monthly support obligation was not large and that he appeared motivated to seek employment after being released from jail. We conclude that the court exercised proper discretion when it ordered the spousal support award to be paid in monthly installments. Ms. Valentine's second assignment of error is overruled.

CONCLUSION

**{¶12}** The trial court exercised proper discretion when it crafted Ms. Valentine's spousal support award. The judgment of the Medina County Common Pleas Court, Domestic Relations Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶13} I concur in the judgment based upon the limited record adduced below. In this case, the trial court properly determined that spousal support was appropriate and reasonable and given the circumstances, it retained jurisdiction over all aspects of spousal support. The central issue was how much support Mrs. Valentine should receive. Although at first glance, the spousal support figure appears to be unreasonable, there was very little evidence from which the trial court could have determined the appropriate amount of support. For example, the trial court did not have evidence of the full extent of Mrs. Valentine's monthly expenses, including utilities,

phone, gasoline, car maintenance or medical insurance as well as other expenses. Nor was there any detail regarding the parties' standard of living. Thus, based upon the limited record before the trial court, I cannot say that its determination was an abuse of discretion.

{¶14} However, I disagree with the suggestion in the main opinion that trial court's spousal support determination rested in part on the fact that Mrs. Valentine had a relationship toward the end of the parties' lengthy marriage. The Valentines had been married for 24 years. The testimony revealed that Mr. Valentine was a chronic alcoholic, who by the time of trial was incarcerated for his third OVI in six years. Mrs. Valentine was unable to pursue employment during much of the marriage because Mr. Valentine could not be trusted to drive the children around. Mrs. Valentine was truthful at trial that she had been in a relationship for four years. She also stated that Mr. Valentine did the same. At trial, Mr. Valentine's counsel argued that the de facto termination date of the marriage should have been the point in time that Mrs. Valentine began the relationship. The trial court's journal entry addresses that argument and rejected it. With respect to spousal support, the trial court referenced Mrs. Valentine's relationship and noted that there was no evidence of cohabitation introduced at trial. I do not read the trial court to have meant that Wife's spousal support could be adversely affected because she had engaged in an extramarital relationship at a point in time when the marriage was all but over. Rather, I read the trial court as noting that spousal support would not have been appropriate if cohabitation and a corresponding financial interrelationship had been established. While I acknowledge that R.C. 3105.18(C)(1)(n) allows for consideration of any other factor the court expressly deems relevant and equitable, I do not take that to mean that the trial court can penalize a spouse by withholding reasonable and appropriate support based upon its subjective view of the propriety of one spouse's relationship.

{¶15} Subsequent to *Zimmie v. Zimmie*, 11 Ohio St.3d 94 (1984), cited in the main opinion, the General Assembly modified the spousal support statute. *See Schindler v. Schindler*, 9th Dist. No. 18243, 1998 WL 46764, *8 (Jan. 28, 1998) ("[U]nder R.C. 3105.18, as modified in April 1991, 'need' is no longer the basis for a spousal support award. Neither is it significant whether appellee 'deserves' the support. The only relevant question is what is 'appropriate and reasonable' under the circumstances. R.C. 3105.18(C)(1).") (Internal citation omitted.). In light of the more recent amendments to the domestic relations statutes, there has been a decisive move away from fault-based concepts that were once spawning voluminous litigation and fraud. Thus, I concur based upon the limited record in this case, although I do not concur with the suggestion that Mrs. Valentine's spousal support was reduced or limited because she engaged in a relationship toward the end of the marriage.

APPEARANCES:

DAVID L. MCARTOR and KRISTOPHER K. AUPPERLE, Attorneys at Law, for Appellant.

HAL BOWERS, Attorney at Law, for Appellee.