[Cite as *Sayoc v. Sayoc*, 2016-Ohio-1199.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IRENE M. SAYOC

    Appellee

    v.

JEFFREY A. SAYOC

    Appellant

C.A. No.    27624

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2013-10-3053

DECISION AND JOURNAL ENTRY

Dated: March 23, 2016

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Jeffrey Sayoc ("Husband"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court reverses.

I

{¶2}    Husband and Plaintiff-Appellee, Irene Sayoc ("Wife"), are both licensed attorneys who married in August 1997. During their 17-year marriage, the parties had three children: G.S., born in 2002; J.S., born in 2004; and W.S., born in 2007. Wife worked for several years before the children were born, first as an attorney and then as a loan closer. Not long after their eldest child was born, however, the parties mutually decided that Wife would stop working. Wife placed her law license on inactive status and focused on raising the children for the duration of the marriage. Between the time the parties married and the time that Wife stopped working, the highest annual salary that she earned was $27,250. Meanwhile, Husband enjoyed steady salary increases over the years and, by 2014, was earning approximately $140,000 per year.

{¶3} In October 2013, Wife filed for divorce, and Husband counterclaimed for the same. The parties were able to draft a shared parenting plan and agree on the allocation of their assets and debts, but could not settle the issues of child support and spousal support. The trial court held a trial on those two issues and heard testimony from the parties, as well as a vocational expert. It ultimately ordered Husband to pay (1) $1,396.89 per month in child support, and (2) $3,500 per month in spousal support for a period of 48 months.

{¶4} Husband now appeals from the trial court's judgment and raises two assignments of error for our review. For ease of analysis, we combine the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT'S CONSIDERATION OF WIFE'S UNSUBSTANTIATED ANNUAL CHILD CARE COSTS OF $24,000.00 IN WEIGHING WHETHER OR NOT TO IMPUTE INCOME TO WIFE IN CALCULATING SPOUSAL AND CHILD SUPPORT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CAUSING PREJUDICIAL ERROR TO HUSBAND AND IN THE ALTERNATIVE AN ABUSE OF DISCRETION.

Assignment of Error Number Two

THE TRIAL COURT FINDING THAT WIFE WAS NOT VOLUNTARILY UNEMPLOYED OR UNDEREMPLOYED AND BY NOT IMPUTING ANY INCOME TO WIFE FOR PURPOSES OF DETERMINING SPOUSAL SUPPORT AND CHILD SUPPORT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PREJUDICING HUSBAND BECAUSE THERE WAS A GREATER AMOUNT OF COMPETENT CREDIBLE EVIDENCE TO SUPPORT A FINDING THAT WIFE HAD A GREATER EARNING ABILITY AND POTENTIAL INCOME AND IN THE ALTERNATIVE ABUSED ITS DISCRETION IN ITS ULTIMATE DETERMINATION OF ITS SPOUSAL AND CHILD SUPPORT AWARDS.

{¶5} In his assignments of error, Husband argues that the trial court erred in its child support and spousal support awards. Specifically, he argues that the court erred by not imputing income to Wife and by relying on her unsubstantiated estimate of their projected annual child

care costs to offset any potential income that she might earn. We agree that the trial court erred in its awards.

**Spousal Support**

{¶6} "In divorce * * * proceedings, * * * the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). Generally, "[t]his Court reviews a spousal support award under an abuse of discretion standard." *Hirt v. Hirt*, 9th Dist. Medina No. 03CA0110-M, 2004-Ohio-4318, ¶ 8. "In awarding spousal support, however, a trial court also must make factual determinations as to the income level [and earning potential] of each spouse." *Kent v. Kent*, 9th Dist. Summit No. 26072, 2012-Ohio-2745, ¶ 6. Those determinations are factual findings that this Court reviews for sufficiency and weight. *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 44. *See also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶7} "'In determining whether spousal support is appropriate and reasonable,' the court shall consider the factors listed in [R.C.] 3105.18(C)(1)[(a)-(n)]." *Organ v. Organ*, 9th Dist. Summit No. 26904, 2014-Ohio-3474, ¶ 6, quoting R.C. 3105.18(C)(1). Those factors are as follows:

(a) The income of the parties, from all sources * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party * * *;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n). "Need is not a basis for an award of spousal support; rather, the court must consider the factors set forth in R.C. 3105.18(C)(1) and determine within its sound discretion whether spousal support is appropriate." *Sigman v. Sigman*, 9th Dist. Wayne No. 11CA0012, 2012-Ohio-5433, ¶ 12.

{¶8}    Initially, we note that Husband repeatedly asserts in his brief that the trial court erred by not imputing income to Wife for purposes of its spousal support award. "Unlike the child support statute, [however,] the spousal support statute does not direct the court to consider the 'potential income' of a spouse * * *." *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 16, quoting R.C. 3119.01(C)(5). Instead, the spousal support statute directs the court to consider the parties' actual income and their respective earning abilities. *Collins* at ¶ 16. "The end result is not to arrive at a specific figure so as to 'impute' income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term." *Id.* at ¶ 19. Accordingly, for purposes of spousal support, the question is not whether the court should have imputed

income to Wife. The question is whether the court erred in determining her actual income and her relative earning ability.

{¶9} The parties stipulated that Wife graduated from the University of Toledo College of Law in 1998 and passed the Ohio bar exam in 1999. They stipulated that she worked as an associate at a law firm from 1999 to 2001 and as a loan closer for Ohio Savings Bank from 2001 to 2002. Wife placed her law license on inactive status in 2001 and, after 2002, never resumed full-time employment. The parties stipulated that the only job she held after that point was a seasonal cashier position that lasted a little over a month and resulted in a total earning of approximately $1,300.

{¶10} At the time of trial, Wife was 42 years old. She testified that she worked for several years before having children, and she introduced a copy of her earnings report. The report showed that Wife earned: (1) $9,568 in 1999; (2) $27,250 in 2000; (3) $15,051 in 2001; and (4) $24,294 in 2002. Accordingly, Wife earned her highest salary in 2000 when she was employed as an associate at a small law firm. Wife testified that she attended law school because she found the coursework interesting, but later discovered that a career in law "was not a good fit for [her]." When the law firm where she worked closed, Wife did not pursue another legal position. Instead, she accepted a job as a loan closer and found it to be a position that she enjoyed far more.

{¶11} Wife testified that, during the pendency of the divorce, she had applied to "many, many jobs online," including "many legal jobs, lots of human resource positions, banking positions, loan closing positions, mortgage closing positions[,] * * * receptionist jobs, * * * [and] anything that [she] thought [she] might be able to do." According to Wife, she only received three interviews and none of the interviews resulted in an offer of employment. She testified that

the feedback she received during her job search was that she "most definitely" needed to update her computer skills as well as her education in general. She also acknowledged that she would need to reinstate her law license and take the requisite number of continuing legal education ("CLE") credits if she wanted to pursue a position where law licensure was either required or desirable. Wife testified that she researched the steps she would need to take in order to reactivate her license, but did not do so because she was concerned about the cost. Even so, she could not remember how much the reactivation fee was or how long she would have to complete her education credits. There also was evidence that Wife did not respond when Husband emailed her opportunities for discounted CLE courses.

{¶12} Wife admitted that Husband had emailed her a job lead on at least one occasion, but that she did not pursue it because it required a law license. She further admitted that she had not taken any classes to update her computer skills. Wife acknowledged that her local library offered free computer classes, but testified that, when she initially looked into the classes, the enrollment period had ended. Wife stated that she "[had] not looked into it since" and did not know when the classes were offered. She also testified that she was not aware of organizations that could assist her with finding a job, such as Ohio Means Jobs or Summit County One Stop. Instead, Wife had strictly submitted her resume online through a variety of websites.

{¶13} Wife indicated that she researched child care options in conjunction with her attempts to return to the workforce. She testified that she explored child care providers on Care.com as well as onsite care at Kindercare Learning Center in Twinsburg. According to Wife, both options were similar in price. Wife estimated that it would cost approximately $24,000 a year to have child care for the parties' three children. She admitted, however, that she did not consult with Husband to see if he might be able to help more with the children and lower

her estimated child care costs. Husband later testified that he had a degree of flexibility in his work schedule that would allow him to do so.

{¶14} Mark Anderson, the owner and CEO of Vocational Assessments and Counseling Services, testified on Husband's behalf. Anderson evaluated Wife and compiled a report documenting his vocational analysis. Anderson testified that he used Wife's background and the information he learned during an interview with her to compile a list of potential jobs for which she might qualify. He explained that he referenced Ohio's Occupational Employment Survey to determine the average wages for those jobs as well as how many of those jobs were available in the applicable labor market. Anderson stated that the Occupational Employment Survey is an annual publication that contains statistics "regarding how many people are employed in that area in that particular job title, and what the average wage is for that particular job title by labor market." Anderson indicated that he searched both the Cleveland and Akron labor markets when he performed his analysis because Wife lived roughly in between the two cities.

{¶15} Anderson's vocational analysis centered on three different jobs: attorney, loan review analyst, and paralegal. According to Anderson, in 2012,[1] there were 4,520 attorneys employed in Cleveland and 860 in Akron with average salaries of $107,470 and $92,180, respectively. There were 600 loan review analysts employed in Cleveland and 70 in Akron with average salaries of $64,320 and $62,350, respectively. Finally, there were 1,860 paralegals employed in Cleveland and 610 in Akron with average salaries of $49,960 and $39,880, respectively. Anderson determined that there were job openings available in each category and, at the time he looked, he was able to identify 20-30 openings. He testified that he was unable to provide the salaries being offered for many of those specific openings because, oftentimes,

---

[1] Anderson testified that, at the time he performed his analysis, the 2012 edition of the Occupational Employment Survey was the most recent edition available.

employers did not advertise a salary range. Instead, he relied on the average salaries reported for those jobs in the Occupational Employment Survey. Anderson admitted that Wife might not be qualified for all of the job openings he identified, but explained that he was not retained to find a specific job for Wife. According to Anderson, when helping clients find a job, the first step was to compile a list of all available jobs and then to narrow the list based on specific qualifications and interests.

{¶16} Anderson confirmed that a variety of organizations exist for the purpose of updating job skills and aiding Ohioans in seeking employment. He testified that, while employment websites such as Monster.com exist, they are not the best avenue for securing employment. He specified that simply submitting a resume might not work, particularly if the person has been unemployed for a significant period of time or if their resume needs updating. It was Anderson's opinion that Wife needed to take a different approach to her job search, given that she had not yet found employment. He testified that Wife needed to update her computer skills and to register with the Ohio Department of Job and Family Services so that she could benefit from their workshops and be assigned a case manager. He testified within a reasonable degree of professional certainty that he would expect Wife to earn approximately $73,917 in the Cleveland area or $64,803 in the Akron area once she found employment.

{¶17} In analyzing the factors set forth in R.C. 3105.18(C)(1), the trial court determined that Wife did not have any actual income. *See* R.C. 3105.18(C)(1)(a). As to her relative earning ability, the court wrote that

> Mark Anderson for Husband testified as a vocational expert with respect to Wife's earning ability. On cross-examination Mr. Anderson testified that he did not know the salaries for the job postings he provided in his report. He also testified that he did not know how many of the jobs Wife would be qualified for.

> For purposes of this decision, the Court finds that Wife's earning ability is $27,500 per year which is what she earned in her last full-time employment.

*See* R.C. 3105.18(C)(1)(b). The court also found, however, that "the possible cost of child care" was a relevant factor in its analysis. *See* R.C. 3105.18(C)(1)(n). It noted that, even if child care only cost $1,000 a month, that amount would consume up to 50% of Wife's earnings, "assuming her earnings were in the range of her earning capacity." The court ultimately awarded Wife $3,500 per month in spousal support for a period of 48 months. In doing so, it noted that relative earning ability was one of the "most relevant" factors in its analysis.

{¶18} Husband argues that the court erred by relying on Wife's unsubstantiated testimony that, if she returned to work full-time, the cost of child care for their three children would be $24,000 a year. Because Wife did not offer any documentation to support her testimony, he argues that the court's finding on that point is based on insufficient evidence and is against the weight of the evidence. Likewise, he challenges on the basis of sufficiency and weight the court's finding that Wife was only capable of earning $27,500 per year. Husband argues that the court either misconstrued or disregarded the testimony of his vocational expert when it considered Wife's earning ability.

{¶19} Contrary to Husband's assertion, the trial court did not actually find that the parties' child care would cost $24,000 a year. *See* discussion, *infra*. The court's focus was on how the "possible cost" of child care could negatively impact Wife's earning ability. Its finding was that, even if child care was available at $12,000 a year, "Wife would be spending up to 50% of her earnings on child care * * *." Thus, under the court's analysis, even if Wife's child care costs were half of the amount she estimated, they would undercut a significant portion of her earning ability. The real question, therefore, is whether the court erred when it found that Wife was only capable of earning $27,500 per year.

**{¶20}** Although Husband asks this Court to review the foregoing finding for both sufficiency and weight, his argument is that the trial court should have relied on the testimony of his expert and should not have relied on Wife's unsupported testimony. Because his argument sounds strictly in weight, we limit our review to that proposition. *See State v. Brooks*, 9th Dist. Summit No. 23237, 2007-Ohio-1424, ¶ 7 ("[S]ufficiency tests the burden of production while manifest weight tests the burden of persuasion."). Thus, we "assume the role of an additional trier of fact and review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact 'clearly lost its way and created [] a manifest miscarriage of justice * * *.'" *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 51, quoting *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20.

**{¶21}** As previously set forth, the goal of a trial court in considering the relative earning ability of the parties is "not to arrive at a specific figure so as to 'impute' income * * *." *Collins*, 2011-Ohio-2087, at ¶ 19. Instead, the court is meant to consider earning capacity for the purpose of "juxtapos[ing] one spouse's earning ability against the other spouse's earning ability." *Id.* The court here determined that Husband's earning capacity far exceeded Wife's earning capacity because (1) the evidence did not tend to show that she could earn more than the highest salary that she earned back in 2000, and (2) her earning capacity would be substantially affected by the child care costs she would have to incur. Having reviewed the record, we must conclude that the trial court lost its way in determining Wife's earning ability.

**{¶22}** While the court found that the possible cost of child care could significantly impact Wife's earning potential, it failed to explain why Wife would be responsible for paying all of those costs herself. It appears that the court did not consider whether the parties might split those costs or whether Husband might be the one to incur them. It also appears that the court

was not consistent in its treatment of child care costs for purposes of its spousal support and child support awards. As explained below, the trial court did not even include an adjustment for the payment of child support on its child support worksheet. Yet, the court relied on the possibility of a significant child care payment in its determination of Wife's earning ability. The court did not explain why child care costs would be a factor in one analysis and not the other.

{¶23} As to the figure the court chose to represent Wife's earning ability, the court simply selected the highest salary that she earned when she was last employed. A salary from 2000, however, would not necessarily be commensurate with a salary from today. Husband's vocational expert testified that Wife was capable of earning a significantly higher salary, but the court rejected his testimony on the basis that he "did not know the salaries for the job postings he provided" and "did not know how many of the jobs Wife would be qualified for." Anderson explained, however, that he was not retained to find a specific job for Wife. He testified for the purpose of projecting the average salary that he, as an expert in the vocational field, would expect Wife to earn. He calculated salary estimations for Wife using an annual publication produced by the Ohio Department of Job and Family Services. While Anderson was not always able to provide salaries for the specific job postings he found, he was able to provide average salaries from two local job markets for three types of positions, all of which were tailored to Wife's educational and employment background. He also testified that open positions existed in all three of those positions. Nevertheless, the trial court disregarded his testimony in its entirety and relied upon an outdated income figure. In doing so, the court also failed to address any of the evidence regarding Wife's efforts to update her skills or to find employment.

{¶24} There was evidence that Wife had not taken advantage of free opportunities that would allow her to update her skills and find employment. Wife admitted that she repeatedly

received feedback from prospective employers, indicating that she needed to update her computer skills and aspects of her education. Nevertheless, she had not taken the free computer classes offered at her local library and did not have any concrete plans to do so in the future. Wife also had not explored what public agencies might be available to help her find employment. While she testified that she applied for "many, many jobs," she admitted that she did so strictly through a variety of websites. There was no evidence that she attempted to secure employment through a different method or to consult with anyone about how to update her resume so as to make herself appear more marketable. It was Anderson's testimony that Wife needed to take a different approach to finding employment, given her lack of success to date.

{¶25} Having reviewed the record, we must conclude that the court lost its way when it determined Wife's earning ability. The judgment entry reflects that the court arbitrarily relied upon Wife's salary information from the year 2000 to assign her a specific income figure. Accordingly, in considering Wife's relative earning ability, the court essentially imputed income to her. *See Collins*, 2011-Ohio-2087, at ¶ 19 (error for court, in considering relative earning ability, to "arrive at a specific figure so as to 'impute' income"). The point of comparing the parties' relative earning abilities, however, is not to arrive at an actual income figure for each spouse. *See id.* The point is to consider one spouse's *ability* to earn, as compared to the other's *ability* to earn. Because the record reflects that the trial court did not properly consider Wife's earning ability, Husband's argument to that effect has merit. Further, because the trial court specified that its finding on earning ability was one of the "most relevant" factors in its spousal support determination, we conclude that it is appropriate to vacate the court's entire spousal support award. On remand, the court must once again apply the evidence to the factors outlined in R.C. 3105.18(C)(1) and determine "the nature, amount, and terms of payment, and duration of

spousal support" that is appropriate and reasonable under the circumstances. R.C. 3105.18(C)(1). To the extent that they relate to the court's spousal support award, Husband's assignments of error are sustained on that basis.

**Child Support**

{¶26} Generally, "[t]his Court reviews a trial court's determination regarding child support matters for an abuse of discretion." *Tustin*, 2015-Ohio-3454, at ¶ 21. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When the issue on appeal is whether the trial court correctly applied the child support statute, [however,] this Court employs a de novo standard of review." *Michaels v. Saunders*, 9th Dist. Lorain No. 14CA010604, 2015-Ohio-3172, ¶ 15. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶27} When parties have a shared parenting plan, "child support is calculated using the worksheet provided in R.C. 3119.022 with reference to the basic child support schedule set forth in R.C. 3119.021." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. The worksheet instructs a trial court to define the annual gross income of each parent and then to make the appropriate adjustments to those amounts, using designated line items. *See* R.C. 3119.022. "There is a rebuttable presumption that the amount calculated pursuant to the child support schedule and applicable worksheet is the correct amount due." *Brown v. Allala*, 9th Dist. Summit No. 26689, 2013-Ohio-3507, ¶ 9. Accordingly, "(1) [a] child-support-computation worksheet must actually be completed and made a part of the trial court's record, (2) this requirement is mandatory and must be literally and technically followed, and (3) any court-

ordered deviation must be supported by findings of fact and must be journalized." *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 7 (9th Dist.), citing *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraphs one through three of the syllabus.

{¶28} For purposes of calculating child support, "income" is defined in one of two ways. *See* R.C. 3119.01(C)(5). When a parent is "employed to full capacity," it is defined as that parent's gross income. R.C. 3119.01(C)(5)(a). When a parent is unemployed or underemployed, it is defined as "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). "[T]he trial court cannot impute income to either party without first making a finding that the party is voluntarily unemployed or underemployed." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 11.

{¶29} The trial court did not include any specific findings in its judgment entry regarding child support. Instead, it attached a child support computation worksheet to its entry and relied on the figures from the worksheet. Because the worksheet lists Wife's annual employment income as zero, we infer that the court did not find her to be voluntarily unemployed or underemployed. *See id.* Husband takes issue with the court's failure to make that finding. His argument that the court erred by not imputing income to Wife is premature at this point, however, because this matter has to be remanded. The court calculated Husband's child support payment based on its determination that Wife would be receiving $42,000 in spousal support. Because we are vacating the court's spousal support award, we must likewise vacate its child support award and remand the matter for further proceedings. In doing so, we note that the trial court did not include any adjustments on line 19 of the worksheet. "Line 19 of the worksheet asks for the expenses for child care, including day care." *Varner* at ¶ 7. If the court determines that one or both of the parties will incur child care expenses, then the court

must include those expenses on line 19 of the worksheet. *See id.*, citing *Marker*, 65 Ohio St.3d 139 at paragraphs one through three of the syllabus. For the foregoing reasons, Husband's assignments of error are sustained insofar as they relate to the court's child support order.

### III

**{¶30}** Husband's assignments of error are sustained for the reasons set forth above. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ERIC E. SKIDMORE, Attorney at Law, for Appellant.

LESLIE S. GRASKI, Attorney at Law, for Appellee.