[Cite as *Wiesen v. Wiesen*, 2025-Ohio-446.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROBERT WIESEN

    Appellant

v.

MICHELLE WIESEN

    Appellee

C.A. No.     31063

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR 2022-03-0701

DECISION AND JOURNAL ENTRY

Dated: February 12, 2025

---

FLAGG LANZINGER, Judge.

**{¶1}** Plaintiff-Appellant Robert Wiesen ("Robert") appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

**{¶2}** This appeal stems from a divorce action between Robert and Defendant-Appellee Michelle Wiesen ("Michelle"). Robert and Michelle were married February 25, 2017, and no children were born as issue of the marriage. Robert and Michelle each have a minor child from a previous relationship. Robert owned and operated two businesses, Reality Remodeling and Repair ("RR&R") and Reality Tree and Landscaping ("RT&L"). Although Michelle owned and operated a cottage baking business, Ma Belle Sweets, LLC, she was primarily a stay-at-home mom for the parties' two children.

**{¶3}** Robert filed a complaint for divorce on March 4, 2022, and Michelle filed an answer and counterclaim on April 21, 2022. Michelle's counterclaim included a request that the trial court award her spousal support and the costs associated with her counterclaim, including reasonable attorney fees and expenses.

**{¶4}** The matter proceeded to trial on March 22, 2023, and June 27, 2023. The trial court heard testimony from both parties, Z.H., a managing member of Eco Realty Investments, and M.K., Robert's girlfriend.

**{¶5}** The trial court issued a Judgment Entry Decree of Divorce without Children ("Decree of Divorce") on February 26, 2023, (1) granting the parties a divorce from each other, (2) providing for a distributive award to Michelle to compensate her for Robert's financial misconduct, (3) providing for the division of parties' assets and liabilities, (4) providing for a spousal support obligation from Robert to Michelle for a period of twenty-four months, and (5) granting Michelle's request for attorney's fees associated with her countersuit.

**{¶6}** Robert subsequently filed this timely appeal, raising four assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN FINDING THAT HUSBAND COMMITTED FINANCIAL MISCONDUCT AND IN AWARDING WIFE A DISTRIBUTIVE AWARD BASED ON THIS ERRED FINDING OF FINANCIAL MISCONDUCT.**

**{¶7}** In his first assignment of error, Robert raises two distinct arguments. Robert first argues that the trial court erred in finding he committed financial misconduct. Robert next argues that the trial court erred by compensating Michelle with a distributive award for Robert's financial misconduct because R.C. 3105.171(E)(5) only permits a trial court to compensate a spouse with a

distributive award when the offending spouse "has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income or other expenses." We disagree.

Trial Court's Finding of Financial Misconduct

{¶8} R.C. 3105.171(E)(4) permits a trial court to compensate an offended spouse with either a distributive award or a greater award of marital property when the other spouse has engaged in financial misconduct including, but not limited to, "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." This court applies a manifest weight of the evidence standard when reviewing whether a trial court erred in finding a spouse has engaged in financial misconduct. *Palazzo v. Palazzo*, 2016-Ohio-3041, ¶ 11 (9th Dist.)*, citing Tustin v. Tustin*, 2015-Ohio-3454, ¶ 43 (9th Dist.). "When reviewing the manifest weight of the evidence in a civil case, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Kokoski v. Kokoski*, 2013-Ohio-3567, ¶ 26 (9th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. Only in exceptional cases, where the evidence weighs heavily in favor of the party seeking reversal, will an appellate court reverse. *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.).

{¶9} In this case, the trial court found that Robert engaged in financial misconduct by (1) purposefully failing to secure financing to purchase the parties' marital residence and/or "re-engage the terms" of a land installment contract executed during the marriage in an effort to deprive Michelle of her interest in the property, (2) diverting funds from the marital estate by purchasing a truck and "encumber[ing] the parties with debt" but "put[ting] the asset in the name

of the business . . . without the knowledge or consent of [Michelle]," (3) taking money from his business checking account "not for the benefit of both parties, but for his and [M.K.]'s personal benefit for vacations, restaurants, and hotel stays," (4) violating the trial court's temporary Mutual Restraining Order by selling a martial asset and diverting the proceeds to his business; and (5) violating the court's temporary orders by failing to pay spousal support and by "filing his 2021 and 2022 taxes married filing separate and claiming [Michelle]'s son as a dependent."

{¶10} On appeal, Robert claims the evidence presented was insufficient to show he had wrongful intent in any of his actions related to the parties' marital assets and finances or his utilization of his business account. Robert does not contest the trial court's findings that he engaged in financial misconduct by violating the court's temporary orders.

{¶11} A trial court's finding that a spouse engaged in financial misconduct requires a showing of "'some element of wrongful intent or scienter[.]'" *Havrilla v. Havrilla*, 2014-Ohio-2747 (9th Dist.), ¶ 47, quoting *Orwick v. Orwick*, 2005-Ohio-5055 (7th Dist.), ¶ 25. In determining whether financial misconduct has occurred, "a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets." *Bucalo v. Bucalo*, 2005-Ohio-6319, ¶ 30 (9th Dist.). Thus, financial misconduct "implicates wrongdoing such as one spouse's interference with the other's property rights or the offending spouse's profiting from the misconduct." *Tustin*, 2015-Ohio-3454 at ¶ 44, citing *Bucalo* at ¶ 22. "Wrongful scienter may be established based on when the alleged financial misconduct occurred in relation to the filing of the divorce or period of separation." *Young v. Young*, 2022-Ohio-2535, ¶ 6 (9th Dist.), citing *Downey v. Downey*, 2007-Ohio-6294, ¶ 17. "'[I]f the time frame of the alleged misconduct does not establish scienter, there must be some other evidence that does

establish it.'" *Choi v. Choi*, 2018-Ohio-725, ¶ 24 (9th Dist.), quoting *Orwick v. Orwick*, 2005-Ohio-5055, ¶ 25 (7th Dist.). The party alleging the existence of financial misconduct bears the burden of proof. *Tustin* at ¶ 44.

{¶12} It is undisputed that during the marriage Robert executed a land installment contract ("Land Contract") with Z.H., Trustee, a managing member of Eco Realty Investments, LLC ("Eco Realty") for the purchase of the marital residence located at 1029 East Avenue, Tallmadge, Ohio on February 28, 2018 ("the Property"). The purchase price was $85,000.00 and Robert made a $4,000.00 down payment. The terms of the Land Contract provided that Robert would pay the remaining unpaid balance in monthly installments, with any remaining balance and accrued interest due and payable on March 1, 2020.

{¶13} On August 28, 2019, Robert and Z.H. executed an Amendment to Agreement ("Amendment") wherein the parties agreed to amend the terms of the Land Contract. The Amendment provided for the payment of a $1,000.00 non-refundable option fee, a $2,000.00 increase in the purchase price of the Property, an increase in the monthly payment, and a one-year extension, making the remaining balance and accrued interest due and payable on March 1, 2021. It is undisputed that although Robert continued to make the monthly payments and reside at the Property, he did not pay the remaining balance and accrued interest by March 1, 2021, and the Land Contract expired.

{¶14} Z.H. testified that, despite the expiration of the Land Contract, he and Robert had discussed extending the contract multiple times and that he was open to the possibility of further extending the contract. Z.H. stated that at the time of trial, Robert had not signed a lease agreement with Eco Realty nor extended the land installment contract. However, Robert conceded during cross-examination that "nothing has changed," and he continues to make the same monthly

payment to Eco Realty, continues to pay the utilities for the Property, continues to run his business from the Property, continues to store his business equipment at the Property, and intends to plant a garden at the Property. Robert also acknowledged that he continued to make significant improvements to the Property after the expiration of the Land Contract by paying for and installing new siding.

{¶15} Michelle testified that in April 2021, she and Robert got into an argument during which Robert "laid into [her]" in front of their children. Michelle further testified that during this conversation, Robert indicated he was unhappy with her as a wife and that she had six months to start meeting his expectations or he would seek a divorce. She stated,

> he was just fed up at this point with me as a wife and he gave me, word for word, gave me six months to get my shit together and that was word for word. And that included I needed to lose the 50 pounds that I gained since we got married and I needed to do better in my duties, I needed to show progress in being a better wife, being a better stay-at-home mom, being a better housekeeper. I had six months to do that and in October we would revisit that discussion, and if I didn't meet those exceptions (sic.), we were going to be having the divorce conversation again. I didn't meet those expectations so here we are.

Michelle also indicated during her testimony that the parties' marriage became "rough" almost immediately after their wedding because she "wasn't meeting [Robert's] expectations as a wife right off the bat."

{¶16} The parties agree that the house was uninhabitable when they first took possession of the Property. Robert testified that a gas mask was required to enter the home and that none of the mechanicals were functioning. Although the parties moved into the home on the Property about three months later, Michelle testified that, for several months, the family had to take showers and do laundry at a neighbor's home. Z.H. also acknowledged during his testimony that the home on the Property "wasn't in good condition" and that Robert had made many improvements. Those improvements included a new kitchen, new drywall, and new siding—none of which were paid

for by Eco Realty. An appraisal performed by Hamilton Appraisal Services the month prior to trial opined the then value of the Property to be $200,000.00—which is $115,000.00 more than the purchase price listed in the original Land Contract. Michelle testified that she believed Robert still intended to purchase the Property because "he would not have put all the hard work and sweat and effort and money that he has into that over the last few years and not do that."

{¶17} During his testimony, Z.H. admitted that Robert continues to maintain and improve the property despite the expiration of the land installment contract and that Robert carried homeowner's insurance on the Property from 2018 until approximately March 1, 2023—just three weeks before the first day of trial.

{¶18} M.K., Robert's girlfriend, testified that she regularly stays with Robert at the Property and confirmed that Robert continues to run his business from the Property, stores his business equipment on the property, recently put siding on the home located on the Property, plans to put in a garden at the Property, and that, to her knowledge, Robert continues to be responsible for the upkeep and maintenance of the Property.

{¶19} Regarding financing, Robert testified that prior to the Amendment extending the duration of the Land Contract, he "attempted to pull out a mortgage" but was denied. Robert attributed the denial to an American Express card he was unaware was sent to collections. Robert blamed Michelle for the credit card being in default, claiming she was responsible for paying the bill. Michelle testified that to her knowledge, Robert was not approved for a mortgage because he lacked "established employment" and "it had to do with . . . his credit score." Neither party submitted any documentary evidence concerning the bank's denial of Robert's mortgage application. Robert admitted he did not apply for a mortgage during the time the Land Contract

was extended, claiming he would have been denied, and that the Land Contract ultimately "failed again just because of circumstances," but did not elaborate further.

{¶20} Although Robert admitted he did not apply for a mortgage after the first attempt, he also admitted to purchasing and financing a 2021 Ford F-150 that same year. He purchased the vehicle with a $12,000.00 downpayment and a loan for $57,000.00.

{¶21} It is undisputed that during the marriage, the parties primarily relied on Robert's businesses for income. Regarding the parties' finances, Michelle testified that Robert "oversaw all of the financials of the marriage" and that he did not always share financial information with her. Although Robert stated during his testimony that he had not taken a profit draw from his business account in multiple years, he also admitted that he uses his business bank account as his personal account. Robert acknowledged that Michelle does not have access to the business account and he has sole control of the account. When asked by the court when he started using his business bank account as his personal account, Robert stated "It was whenever there was issues with the shared bank account where she was taking money just doing awkward things, and just it wasn't working out so I just started using my business account for my expenses." The records shows that Robert used his business account for significant personal expenses in the six months before the trial, including $3,015 on vacationing with his girlfriend.

{¶22} Upon review of the evidence presented, this is not the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice by finding Robert engaged in financial misconduct by either failing to secure financing and/or failing to "re-engage the terms of the Land Contract." The trial court could have reasonably concluded that Robert was contemplating divorce at the time the Land Contract expired and during the year preceding the filing of his Complaint, that Robert purposefully failed to seek financing and/or execute a new or

amended land installment contract with Eco Realty with the intent to deprive Michelle of her interest in the Property, that Robert intended to remain living and running his business from the Property, and that Robert intended to enter into another land installment agreement with Eco Realty upon the finalization of the divorce, and thereby create a separate property interest in the Property. Although Robert raises an argument that the trial court erred by finding that he "committed misconduct because he made improvements to the residence that the parties did not own[,]" the trial court made no such finding. Rather, the trial court pointed to the improvements as the reason for the increase in the Property's value and in support of the trial court's finding that Robert "intends to remain at the Marital Residence and at some point in time after this divorce action is finalized, enter into a Land Contract once again."

{¶23} The trial court could have also reasonably concluded that Robert's use of marital funds constituted financial misconduct. Specifically, the trial court could have reasonably concluded that when purchasing the 2021 Ford F-150, Robert purposefully diverted marital funds to a business over which Michelle had no control, and that he did so for his own benefit. Next, the trial court could also have reasonably concluded that Robert purposefully concealed marital funds from Michelle by utilizing his business bank account as a personal bank account for his own benefit and the benefit of his girlfriend while denying Michelle access to marital funds. Robert does not dispute that he had sole control over the business bank account and readily admitted that he stopped moving funds into the parties' joint account because "she was taking money just doing awkward things, and just it wasn't working out." Finally, the trial court could have reasonably concluded that Robert dissipated marital assets for his own benefit and for the benefit of his girlfriend and that by doing so, he reduced the apparent annual income he earned, as well as the total assets of the business for purposes of marital ownership.

{¶24} Based on the foregoing, we cannot conclude that this is the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice when it determined Robert had engaged in financial misconduct. *See Palazzo*, 2016-Ohio-3041 at ¶ 10, citing *Tustin*, 2015-Ohio-3454 at ¶ 43.

Distributive Award

{¶25} Finally, Robert's argument that the trial court "erred as a matter of law because a distributive award, by definition, applies ***only*** when a spouse fails to disclose property, assets, debt or income. R.C. §3105.171(E)(5)" has no merit.

{¶26} Because Robert's argument presents an issue of law, we apply a de novo standard of review. *See Simms v. Hupp*, 2022-Ohio-1158, ¶ 10. First, "distributive award" under R.C. 3105.171 is defined as "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in [R.C. 3105.18.]." R.C. 3105.171(A)(1). Second, R.C. 3105.171(E)(4) expressly provides, "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse *with a distributive award* or with a greater award of marital property." (Emphasis added.)

{¶27} Robert's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN ITS PROPERTY DIVISION PURSUANT TO ITS FINDING THAT HUSBAND COMMITTED FINANCIAL MISCONDUCT.**

{¶28} In his second assignment of error, Robert contends that the trial court erred in its division of property. Robert first asserts that the trial court erred "by issuing [Michelle] a non-existent property interest pursuant to a failed land contract." Alternatively, Robert argues the trial court abused its discretion in determining the amount of the distributive award. Finally, Robert contends that the trial court also erred "in allocating [Robert] all of his personal and business debt that was acquired during the marriage." We disagree.

{¶29} "The trial court maintains 'broad discretion when fashioning its division of marital property.'" *Barlow v. Barlow*, 2009-Ohio-3788, ¶ 13 (9th Dist.), quoting *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994). "Our review is limited to a determination of whether the trial court's division of property amounted to an abuse of discretion." *Fletcher v. Fletcher*, 1995 WL 29008, *2 (9th Dist. Jan. 25, 1995). An abuse of discretion is more than an error in judgment and implies that the court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶30} The distribution of assets in a divorce proceeding is governed by R.C. 3105.171. If one spouse has engaged in financial misconduct, R.C. 3105.171(E)(4) permits the trial court to compensate the offended spouse with a distributive award. A "distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support . . . ." R.C. 3105.171(A)(1). Pursuant to R.C. 3105.171(F), whether making a division of marital property or determining whether to

make distributive award of any amount under R.C. 3105.171, the trial court is required to consider all the following factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

<u>Distributive Award</u>

**{¶31}** As discussed above, the trial court found that Robert engaged in financial misconduct and that Michelle was entitled to a distributive award in the amount of $57,500.00. Specifically, the trial court found:

> It is clear from the timeline of events that [Robert] intends to remain in the marital residence and, when his numerous litigation issues are resolved, enter into a land contract on the Marital Residence located at . . . .

> It is clear from the record that [Robert] deliberately and intentionally permitted the land contract to expire and thereby dissipated this martial asset.

[Michelle] obtained an appraisal on the residence by Hamilton Appraisal Services. . . . The appraisal valued the real estate at $200,000.00.

[Michelle] is entitled to a property settlement of $57,500 which represents 50% of the equity in the marital residence.

The trial court then deducted Michelle's share of the transcript fees owed to Robert and made "a distributive award as follows: [Robert] is hereby ORDERED to pay [Michelle] a property settlement for the Marital Residence in the amount of Fifty Five Thousand Nine Hundred Seventy-Four Dollars ($55,974) . . . within One Hundred and Eighty (180) days of the date of the filing of the Final Decree of Divorce."

{¶32} Thus, contrary to Robert's assertion on appeal, the trial court did not "issue" Michelle property interest. Rather, the trial court made a determination as to what an equitable distributive award to Michelle would be under the circumstances in this case. Those circumstances include the trial court's finding that Robert intends to execute a land installment contract with Z.H. to purchase the Property after the divorce is finalized and thereby create his own separate property interest after purposefully dissipating Michelle's interest in that same property. Because the trial court did not issue Michelle a property interest, Robert's first argument is without merit.

{¶33} Robert also argues that the trial court abused its discretion in determining the amount of the distributive award because the trial court used the term "equity" when it determined that a distributive award equal to 50% of the difference between the appraised value of the Property and the original purchase price of the Property was equitable in this case. Robert argues that even if Robert had not dissipated the parties' marital interest in the Property, the parties' interest, or equity, in the Property "would only be that which they have paid down from the total loan amount." While the trial court's use of the term "equity" is unfortunate, given the trial court's broad discretion in fashioning an equitable distributive award, we cannot say that the trial court abused

its discretion when it found the amount of $57,500.00 to be the appropriate amount to compensate Michelle for Robert's dissipation of her interest in the Property. In making this determination, the trial court considered all of the R.C. 3105.171(F) factors and reasoned that Robert had the intention and means to enter into a land contract for the purchase of the Property after the finalization of the parties' divorce and thereby create a separate interest in the Property for his own benefit.

### Division of Marital Debt

{¶34} Finally, Robert argues that the trial court abused its discretion by allocating him "all of his personal and business debt that was acquired during the marriage." As an initial matter, we note that the trial court did not distribute marital debt between the parties based on any finding of financial misconduct as suggested by Robert's stated assignment of error. Instead, a review of the Decree of Divorce shows the trial court distributed the debt pursuant to R.C. 3105.171(C)/(F).

{¶35} R.C. 3105.171(C) requires a trial court to divide martial property equally, except to the extent that an equal division would be inequitable. "[T]his Court . . . has typically held that marital debt is subject to allocation as part of the property distribution and that debt allocation is guided by the same equitable factors contained in R.C. 3105.171[F]." *Polacheck v. Polacheck*, 2013-Ohio-5788 (9th Dist.), ¶ 18. Nonetheless, "[w]hen dividing marital property, the trial court shall consider all relevant factors, including but not limited to those set forth in R.C. 3105.171(F)." *Vujovic v. Vujovic*, 2005-Ohio-3942, ¶ 38 (9th Dist.).

{¶36} Regarding the parties' liabilities, the trial court allocated Robert the following debts,

> any debts held in his name, or in his businesses name or in which is personally guaranteed, including: a personal guarantee on a $16,000.00 loan . . . ; a Capital One Credit Card with a balance of $7,800.00; a Capital One Venture Card with a balance of $2,800.00, a $12,000.00 personal loan through One Main Financial; Federal and State taxes for 2021; payments owed to RITA; [and] medical bills.

The trial court also allocated Michelle responsibility for the Capital One credit card in her name and any and all debts in her sole name.

{¶37} The trial court also awarded Robert RR&R and RT & L in their entirety, including all assets and liabilities. The trial court found that the businesses had unencumbered assets with a combined total value of $31,000.00 and that Robert paid personal expenses out of the business checking account in the amount of $55,914.23 over the seven months preceding trial. The trial court also determined that Robert should retain three trailers purchased during the marriage and that those trailers were originally purchased for $8,100.00, $2,200.00, and $2,200.00. Finally, the trial court found that the Ford F-150 titled to RR&R and encumbered by a personal auto loan, has a value of $45,000.00.

{¶38} The trial court found the businesses allocated to Robert had the following liabilities: a $48,703.00 auto loan for the 2021 Ford F-150, a $2,000.00 maxed-out line of credit with Lowe's, a Home Depot credit card with a balance of $4,400.00, attorney fees in the amount of $12,769.16, a $16,000.00 personal loan incurred to cover business expenses, and a One Main Financial personal loan for $12,000.00 incurred to cover one payment toward the settlement of a lawsuit. The trial court noted that Robert testified he will be recompensed for the attorney fees through insurance.

{¶39} The trial court further found that although Robert testified he had additional personal debts including $10,600.00 in credit card debt, a Regional Income Tax Authority tax liability of $1,684.00, $58,000.00 in student loans, and medical bills in the amount of $23,000.00, Robert did not present any documentary evidence supporting these claims. Regardless, the trial court determined the student loan debt was incurred prior to the marriage and was Robert's separate property, and allocated that debt to Robert.

{¶40} Regarding Michelle's business, Ma Belle Sweets, the trial court awarded the business to Michelle in its entirety, including all assets and liabilities. The business's assets included "two KitchenAids, pans, cake pans, spatulas, and inventory such as food items." The gross business earnings of Ma Belle Sweets in the year preceding trial was $13,000.00. The trial court made no findings regarding the business's liabilities, if any.

{¶41} Upon review, we conclude that Robert has not shown that the trial court abused its discretion in its allocation of the parties' debt. The majority of the debt distributed to Robert include liabilities he incurred as a result of his business dealings over which he had sole control, liabilities for which Robert testified he may be reimbursed, and liabilities the trial court determined were incurred prior to marriage and were his separate property. The trial court awarded Robert RR&R and RT&L in their entirety, and divested Michelle of any claim to the businesses, including any future profits. The total amount of the liabilities that the trial court attributed to the businesses was $95,872.16 and the total amount of assets, including unencumbered physical assets and personal expenses, was $86,914.23. The trial court also distributed the three trailers to Robert, which had purchase prices totaling $12,500.00. Additionally, given the significant disparity in the parties' earning abilities[1], the trial court, in its sound discretion, could have easily determined that Robert was in a better position to pay the debts at issue.

{¶42} Given the trial court's broad discretion in fashioning an equitable division of marital property, and viewing the property division in its entirety, we cannot conclude that the trial court abused its decision in allocating the business assets and liabilities to Robert.

{¶43} Robert's second assignment of error is overruled.

---

[1] See discussion in Assignment of Error III below.

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ERRED IN ITS DETERMINATION OF THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.**

**{¶44}** In his third assignment of error, Robert argues that the trial court erred in its determination of the amount and duration of spousal support because the trial court (1) miscalculated his income, (2) erred in its analysis of the parties' relative earning abilities, (3) failed to consider the parties' relative assets and liabilities, and (4) "seemingly granted [Michelle] spousal support as a punitive measure" for Robert's failure to pay temporary support during the proceedings. We disagree.

**{¶45}** Generally, "[t]his Court reviews a trial court's award of spousal support under an abuse of discretion standard." *Doubler v. Doubler*, 2023-Ohio-393, ¶ 14 (9th Dist.). An abuse of discretion is more than an error of judgment and implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable in its ruling." *Blakemore*, 5 Ohio St.3d at 219. However, Robert's challenge to the trial court's findings regarding his income and Michelle's earning ability invokes a manifest weight of the evidence review. *See Lee v. Lee*, 2019-Ohio-61, ¶ 8 (9th Dist.). In reviewing the manifest weight of the evidence,

> this Court "must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." In weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse."

(Internal citations omitted.) *Kim v. Kim*, 2020-Ohio-22, ¶ 10 (9th Dist.).

**{¶46}** "A trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n) '[i]n determining whether spousal support is appropriate and reasonable,' and in determining the nature, amount, terms, and duration of a spousal support payment." *Lee v. Lee*, 2019-Ohio-61, ¶ 9 (9th

Dist.), citing R.C. 3105.18(C)(1). These factors include "[t]he income of the parties, from all sources" and "[t]he relative earning abilities of the parties[.]" R.C. 3105.18(C)(1)(a) and (b). Because a "trial court is not required to comment on each statutory factor; . . . the record must only show that the court considered the statutory factors when making its award." *Manos v. Manos*, 2015-Ohio-2932, ¶ 13 (9th Dist.). "With respect to the earning abilities of the parties, this Court has noted that '[t]he end result is . . . to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term.'" *Lee* at ¶ 9, *quoting Collins v. Collins*, 2011-Ohio-2087, ¶ 19 (9th Dist.). "[T]he goal of a trial court in considering the relative earning abilities of the parties is not to arrive at a specific figure so as to 'impute' income . . . ." *Collins,* 2011-Ohio-2087, at ¶ 19. "Instead, the court is meant to consider earning capacity for the purpose of 'juxtapos[ing] one spouse's earning ability against the other spouse's earning ability.'" *Sayoc v. Sayoc*, 2016-Ohio-1199, ¶ 21 (9th Dist.), quoting *Collins* at ¶ 19.

**{¶47}** In its Decree of Divorce, the trial court concluded that spousal support from Robert to Michelle was appropriate and reasonable after considering all the statutory factors under R.C. 3105.18(C) and ordered Robert to pay Michelle spousal support in the amount of $2,500.00 per month, for a period of 24 months. The trial court initially determined the appropriate amount of spousal support to be $2,485.71 per month. However, the trial court increased the spousal support award to $2,500.00 in light of Robert's failure to comply with the temporary spousal support order.

**{¶48}** In reaching its decision, the trial court expressly analyzed the statutory factors under R.C. 3105.18(C)(1), including the duration of the marriage, the income of the parties, their relative earning abilities, and the parties' assets and liabilities. To determine Robert's income, the court examined evidence relating to his business. Robert's testimony during cross-examination revealed

that he had significant discretionary spending, with personal expenditures from his business account amounting to at least $31,914.23 over the six-month period preceding the trial. The trial court extrapolated this amount to $63,829.46 a year in discretionary spending. The court found this figure to be a more accurate reflection of the financial resources available to Robert than his Schedule K-1 federal tax form.

{¶49} Upon review of the record, we conclude Robert's argument that the trial court's calculation of his income at $63,828.46 is "entirely unsupported by the record[,]" is meritless. Although Robert presented his Schedule K-1 federal tax form as evidence to support his claim that he did not receive an income from his business in 2022, Robert did admit he spent $55,914.23 out of his business account in six months and only claimed $24,000.00 of those funds were business expenses. As such, the trial court's finding regarding Robert's income is supported by the record and not against the manifest weight of the evidence.

{¶50} Robert next argues that the trial court erred in its determination regarding the parties' earning abilities. The trial court concluded that Robert has a higher earning capacity than the income the court extrapolated because RR&R's gross business receipts for 2022 totaled $275,772.00 and that Robert testified he will be receiving more income once he has finished paying the settlement for a lawsuit and/or is reimbursed through his business insurance policy. The trial court also concluded that Michelle's earning capacity at this time is approximately $34,000.00, noting that no evidence was presented to suggest Michelle could earn more than her current income utilizing her CDL.

{¶51} Upon review, we cannot conclude that the trial court's findings related to the parties' relative earning abilities is against the manifest weight of the evidence. A review of RR&R's 2022 U.S. Income Tax Return for an S Corporation shows RR&R had gross receipts in

the amount of $275,772.00, gross profit of $164,838.00, and $181,769.00 in deductions. Additionally, Robert testified at trial that RR&R settled a lawsuit by agreeing to pay $36,900.00 to the opposing party and that he had incurred $73,000.00 in attorney's fees in defending the lawsuit. He expressly stated, "So between paying the settlement payments that I had agreed to and escrowing those and everything else, that's what has offset a lot of my income so (sic.)." Robert further testified that he believed insurance would ultimately cover the attorney's fees.

{¶52} Michelle testified that when Robert advised her that he wanted a divorce, she applied to be a bus driver in her son's school district because she did not believe her bakery would provide her with full-time income. She stated she works five hours a day and anticipates earning approximately $20,000.00 per year as a bus driver. Michelle also testified she anticipates earning between $10,000.00 and $15,000.00 from her baking business. Although Michelle admitted she only works 25 hours a week as a bus driver, a review of the record shows no evidence was presented that she is capable of earning more than $34,000.00.

{¶53} Next, Robert asserts that the trial court failed to consider the relative assets and liabilities of the parties in making its spousal support determination. A simple review of the Decree of Divorce belies this claim. Contrary to Robert's assertion on appeal, the trial court expressly considered the relative assets and liabilities of the parties, stating:

> Other than the [Michelle]'s vehicle, the assets of the parties are all titled to [Robert], or [Robert]'s businesses. [Robert] was the primary income-earner during the marriage. This includes the possession (not ownership) of the marital residence, one truck, three trailers, and all of the tools, and business checking account. Both parties have credit card debt. Neither owns real estate, retirement accounts, or has a remarkable bank account. The main assets of each party consists of their businesses and personal belongings.

> While [Robert] has significant liabilities for loans, and credit cards, and medical bills, he testified that as to the costs of the settlement for the Cuyahoga County lawsuit, he had business insurance and filed a claim with the State of Ohio Board of Insurance. He could be reimbursed for settlement and/or his costs of litigation.

As to his medical bills, he was awaiting reimbursement. [Michelle] has debt on one credit card in her name.

**{¶54}** Finally, upon review, we conclude that Robert's claim that the trial court's award of spousal support to Michelle was a punitive measure is unfounded.

**{¶55}** Robert's argument on appeal takes specific exception with the trial court's increase in its award from $2,485.71 to $2,500 per month, due to Robert's failure to comply with the temporary spousal support order of $400 per month. However, R.C. 3108.18(C)(1)(n) permits the trial court to consider any other factor the court finds relevant and equitable in determining the term and amount of spousal support. A review of the record shows Robert admitted he did not pay Michelle temporary spousal support in the amount of $400.00 per month beginning November 1, 2022, as ordered. Thus, as of the first day of trial, Robert owed five months of temporary spousal support, or $2,000.00. The trial court's minimal increase of $14.29 per month over 24 months for a total of $342.96, or approximately 17% of the temporary spousal support Robert owed to Michelle as of the first day of trial, does not reflect a punitive intent and was a reasonable exercise of the court's discretion. *See* R.C. 3105.18(C)(1)(n); *see also Colom v. Colom*, 58 Ohio St.2d 245, 245 (1979), syllabus ("In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree.").

**{¶56}** Robert's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES TO WIFE.**

**{¶57}** In his fourth assignment of error, Robert argues that the trial court abused its discretion in awarding Michelle attorney fees because the court failed to consider the reasonableness of the attorney fees as required by R.C. 3105.73. We agree.

**{¶58}** Pursuant to R.C. 3105.73(A), "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In making the determination whether such an award is equitable, the court is permitted to "consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* Additionally, this Court has previously stated that a "trial court *must* determine the reasonableness of the time spent on the matter and the reasonableness of the hourly rate." (Emphasis added.) *Miller v. Miller*, 2010-Ohio-1251, ¶ 32 (9th Dist.). As to the determination of the reasonableness of fees, Summit County Domestic Relations Court Loc.R. 25.04(B) provides:

(1) Expert testimony is not required to prove the reasonableness of attorney's fees.

(2) In determining the reasonableness of attorney's fees requested, the court shall consider the affidavit of the attorney concerning fees and expenses, and Rule 1.5(a) of the Rules of Professional Conduct.

Rule 1.5(a) of the Ohio Rules of Professional Conduct provides that the following factors are to be considered in determining the reasonableness of attorney's fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

**{¶59}** "Under R.C. 3105.73, a trial court has broad discretion in determining attorney fees and its award will not be disturbed on appeal absent a showing of a clear abuse of discretion." *Kolar v. Kolar*, 2018-Ohio-2559, ¶ 4 (9th Dist.), citing *Miller v. Miller*, 2008-Ohio-4297, ¶ 71 (9th Dist.). "An abuse of discretion is something more than an error of law or in the exercise of judgment; 'it implies that the court's *attitude* is unreasonable, arbitrary or unconscionable.'" (Emphasis sic.) *Simecek v. Simecek*, 2024-Ohio-2471, ¶ 14 (9th Dist.), citing *Blakemore*, 5 Ohio St.3d at 219 (1983). "When applying this standard, a reviewing court is precluded from simply substituting its judgment for that of the trial court." *Id.* citing *Pons*, 66 Ohio St.3d at 621 (1993).

**{¶60}** A review of the Decree of Divorce shows that although the trial court determined an award of attorney's fees to Michelle was equitable, the trial court did not make any findings as to the reasonableness of those fees. Moreover, a thorough review of the record shows neither party presented any evidence regarding attorney's fees, and the only reference during trial to Michelle's attorney fees occurred during her attorney's closing statement. Based on the above, we conclude that the trial court abused its discretion when it awarded Michelle $10,000.00 in attorney's fees

**{¶61}** Robert's fourth assignment of error is sustained.

III.

**{¶62}** Robert's first, second, and third assignments of error are overruled. Robert's fourth assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed in part and affirmed in part.

Judgment reversed in part,
and affirmed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX and SARAH M. CONARD, Attorneys at Law, for Appellant.

JOY L. CHICATELLI, Attorney at Law, for Appellee.

KENNETH C. CRISLIP, Attorney at Law, for Appellee.